TOPIC et al., Plaintiffs,

v.

**CIRCLE REALTY COMPANY,**
Defendant.

TOPIC et al., Plaintiffs,

v.

**SPRING REALTY COMPANY,**
Defendant.

TOPIC et al., Plaintiffs,

v.

**SHOREWOOD REALTY COMPANY,**
Defendant.

Nos. CV–74–591–JWC, CV–74–592–JWC, CV–74–594–JWC.

United States District Court,
C. D. California.

May 20, 1974.

Matthew C. Long, Los Angeles, Cal., Lowell Johnston, William E. Hickman, Samuel T. Biscoe, San Francisco, Cal., for plaintiffs.

Arthur W. Francis, Jr., Robert E. Jones, Robert L. Wilson, Los Angeles, Cal., Ronald C. Pass, Torrance, Cal., Carl B. Pearlston, Jr., Redondo Beach, Cal., for defendants.

## MEMORANDUM OPINION

CURTIS, District Judge.

The plaintiffs have filed three almost identical Civil Rights actions seeking to enjoin the defendants, (real estate firms) from engaging in alleged discriminatory practices in violation of the Fair Housing Act of 1968, more correctly called the "Civil Rights Act of 1968," Title VIII, 42 U.S.C. § 3601 et seq.

Jurisdiction is invoked under 28 U.S.C. § 1343(4) and 42 U.S.C. § 3612 to remedy alleged violations of 42 U.S.C. § 3604. Plaintiffs also allege a claim under the 1866 Civil Rights Act, 42 U.S.C. § 1982.

Motions to dismiss have been filed on the part of all defendants, and since precisely the same questions of law are raised in each case, the motions were heard together and the court renders this single opinion which is equally applicable to all three cases.

It is alleged in the plaintiffs' complaint that the plaintiff, TOPIC, is an unincorporated association formed October 4, 1972, its purpose being "To Preserve an Integrated Community", from which the name TOPIC is derived. The complaint further alleges:

> "TOPIC is an interracial, volunteer organization with approximately 100 member families living in the cities of Torrance and Carson, California, and in the unincorporated section of Los Angeles County between the cities of Carson and Torrance (hereinafter the 'L.A. County strip'). One of the purposes of TOPIC is to eliminate unlawful racial discrimination against its members and against other persons in the marketing and sale of housing in the cities of Torrance and Carson, and in the L. A. County strip. TOPIC seeks to assure to its members the right to the important social and professional benefits of interracial associations that arise from living in an integrated community."

The individual plaintiffs, some of whom are black and some of whom are white, reside within the community embracing the Torrance, Carson and L. A. County strip area. From July to November 1973, TOPIC conducted an investigation to determine whether the policies and practices of real estate firms doing business in that area were in compliance with the Civil Rights Act of 1866 and the Civil Rights Act of 1968. The investigation focused on whether these real estate firms were engaged in "racial steering", which plaintiffs characterize as the "practice of directing non-white homeseekers to housing in designated minority residential areas," a practice prohibited by the Civil Rights Act of 1968.

The investigation was conducted by the use of teams of black and white couples posing as homeseekers, whose housing needs and financial ability were for all intents and purposes about equal. These

testing teams visited some 17 realty companies, including the defendants.

The complaint then describes a number of specific encounters between the members of the testing teams and the agents of the real estate firms, which conduct plaintiffs allege is a "part of the company's continuing policies and practices to limit, classify, segregate, and otherwise discriminate on the ground of race in the sale of housing."

The plaintiffs contend they are injured by these practices "by being deprived of the important social and professional benefits of living in an integrated community. Moreover, they have suffered and will continue to suffer embarrassment and economic damage in their social and professional activities from being stigmatized as residents of either white or black ghettos . . . ."

Although it may well be argued that some of the conduct as alleged does not violate the Acts, for the purposes of this motion, only, I will accept plaintiffs' characterization of defendants' practices as that of "racial steering" such as is prohibited.

■ The threshold question is: Do these plaintiffs have standing to maintain this action? The defendants contend that they do not since the alleged steering was not practiced upon the plaintiffs. If it occurred at all, defendants argue, it occurred with respect to testing teams who are not in reality homeseekers or purchasers. Defendants argue there has been no individual injury alleged. Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

The plaintiffs, however, rely on the recent case of Trafficante v. Metropolitan Life Insurance Co., 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972). In this case, two tenants in Parkmerced, an apartment complex in San Francisco, brought an action against the landlord, charging discriminatory practices against nonwhite rental applicants. Such practices included making it known to them that they would not be welcome at Parkmerced, manipulating a waiting list for apartments, delaying action on their applications, using discriminatory acceptance standards and the like. The tenants claimed that they had been injured in that (1) they had lost the social benefits of living in an integrated community; (2) they had missed business and professional advantages which would have accrued if they had lived with members of minority groups; (3) they had suffered embarrassment and economic damage in social, business and professional activities from being stigmatized as residents of a white ghetto. The District Court held that the tenants were not within the class of persons entitled to sue under the Act. 322 F.Supp. 352. The Court of Appeals affirmed, construing 42 U.S.C. § 3610(a) narrowly to permit complaints only by persons who were the objects of discriminatory housing practices. 9 Cir., 446 F.2d 1158. The Supreme Court, however, reversed, holding that the tenants had a right to sue. The Court pointed out that § 3610(a) extends the right to sue to "[a]ny person who claims to have been injured by a discriminatory housing practice" and that such language showed a congressional intention to define standing as broadly as is permitted by Article III of the Constitution.[1] Congress further recognized that "[w]hile members of minority groups were damaged the most from discrimination in housing practices . . . those who were not the direct objects of discrimination had an interest in

---

[1]. In Hackett v. McGuire Brothers, Inc., 445 F.2d 442 (3rd Cir. 1971) the court allowed a suit to be started by "a person claiming to be aggrieved" under the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(a) concluding that the words used showed "[A] congressional intention to define standing as broadly as is permitted by Article III of the Constitution." *Id.* 446. The Supreme Court in the *Trafficante* case reached the same conclusion with respect to plaintiffs in a suit brought under the Civil Rights Act of 1968 insofar as they are tenants of the same housing unit that is charged with discrimination.

ensuring fair housing, as they too suffered." [2]

The Court also noted:

"The language of the Act is broad and inclusive. Individual injury or injury in fact to petitioners, the ingredient found missing in Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636, is alleged here. What the proof may be is one thing; the alleged injury to existing tenants by exclusion of minority persons from the apartment complex is the loss of important benefits from interracial associations."

The Supreme Court's logic appears to apply with equal force and relevance to the facts before this court, and I would have no hesitancy in applying it here were it not for the clear indication that the Court in *Trafficante* was extending standing to sue only to tenants of a housing project complaining of discriminatory practices of the management. The Court's language presupposes some outer limits to the rule enunciated, but the situations in the two cases are so similar there seems to be no just reason for setting such limits short of the facts of the case before this court.

It is, of course, true that the apartment complex with which the Supreme Court was dealing had a resident population of approximately 8,200 residents, whereas the Torrance-Carson community has a population of something over 100,-000. Its residents, however, live in a closely settled area.[3] Those residing in this community buy from the same stores, attend the same churches, send their children to the same schools. They are served by the same recreational facilities and enjoy the same cultural opportunities. If any of the 8,200 residents of an apartment complex can be injured by virtue of the loss of important benefits from interracial associations surely the residents of the Carson-Torrance community can and do suffer similar deprivations.

One further question remains. Since the testers were not, in fact, real purchasers and therefore any steering as to them would cause no effect, whatever, upon the racial balance of the community, do these cases, in fact, involve actual controversies in the constitutional sense? [4]

Section 3604 of Title 42 prohibits certain discriminatory practices without regard to their actual effect upon the community. So when a plaintiff alleges that the defendants have engaged in a prohibited discriminatory practice, all that is needed to support an injunction is proof that the practice exists. The Supreme Court in *Trafficante* pointed out that the Act contemplated its enforcement not only by the Attorney General, but also by aggrieved persons acting as "private attorneys general." This practice, the Court continues,

"[S]erves an important role in this part of the Civil Rights Act of 1968 in protecting not only those against whom a discrimination is directed but also those whose complaint is that the manner of managing a housing project affects 'the very quality of their daily lives.' Shannon v. United States Dept.

2. See Hearings before the Subcommittee on Housing and Urban Affairs of the Senate Committee on Banking and Currency on S.1358, S.2114, and S.2280, 90th Cong., 1st Sess. (1967).

3. Although the record makes no reference to the population or area of the Torrance-Carson community, the court takes judicial notice of these facts.

4. Unless a case or controversy exists, Article III of the Constitution precludes the exercise of judicial power. North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed. 2d 413 (1971). To be justiciable, a controversy " '[M]ust be definite and concrete, touching the legal relations of parties having adverse legal interests . . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' Aetna Life Ins. Co. v. Saworth, 300 U.S. 227, 240–241 [57 S.Ct. 461, 464, 81 L.Ed. 617] (1937)". *See also* Isaacs Brothers Company v. Hibernia Bank, 481 F.2d 1168, 1170 (9th Cir. 1973).

of Housing & Urban Dev., 436 F.2d 809, 818 (CA3)." *Id.* 211 [5]

For the foregoing reasons, the defendants' motions to dismiss in all cases are denied.

This court is of the opinion that the order denying the defendants' motions to dismiss involves a controlling question of law as to which there is substantial grounds for a difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. These cases are therefore certified for immediate appeal and all proceedings herein shall be stayed pending such appeal.

5. In *Trafficante* the plaintiffs were proceeding under Title 42 U.S.C. § 3610(d), whereas the plaintiffs in the case before us are proceeding under 42 U.S.C. § 3612. This distinction is irrelevant for it seems clear that the congressional intention was to define the right to sue under § 3612 at least as broadly as under § 3610(d).

The plaintiffs, here, also seek relief in count II pursuant to the provisions of the Civil Rights Act of 1866, 42 U.S.C. § 1982. The District Court in the *Trafficante* case dismissed a similar count on the ground that there was no standing and the Circuit Court affirmed. The Supreme Court did not reach this question and consequently did not reverse this decision. Upon the authority, therefore, of the Circuit Court's opinion, I would hold that the plaintiffs have no standing to sue under the provisions of § 1982.