**HEIGHTS COMMUNITY CONGRESS et al., Plaintiffs,**

v.

**ROSENBLATT REALTY, INC., et al., Defendants.**

No. C74–1059.

United States District Court,
N. D. Ohio, E. D.

March 11, 1975.

Avery S. Friedman, Alan N. Bellman, Cleveland, Ohio, for plaintiffs.

Thomas Schick, McNeal, Schick, Archibald & Carlson, Cleveland, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

BATTISTI, Chief Judge.

This action is brought to enjoin alleged racial discrimination in housing prohibited by Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 et seq. ("Fair Housing Act") and the Civil Rights Act of 1866, 42 U.S.C. § 1982. Plaintiffs seek declaratory relief pursuant to 28 U.S.C. § 2201 and injunctive relief and damages pursuant to 42 U.S.C. §§ 1981, 1982, 3604, 3617 and the Thirteenth Amendment to the United States Constitution. Jurisdiction is predicated on 28 U.S.C. §§ 1343(3) and (4), 2201 and 42 U.S.C. §§ 3612 and 3617.

Plaintiff Heights Community Congress ("the congress") is an Ohio, not for profit corporation composed of representatives of the religious, business, social and educational elements of Cleveland Heights. The avowed purpose of the congress is the promotion and maintenance of Cleveland Heights as an open and integrated community. The congress alleges that the conduct of the defendants "directly obstructs, frustrates and damages" it in the pursuit of its objective.

Plaintiffs Ray F. and Barbara L. Gricar are white citizens who presently reside in Cleveland Heights. They allegedly sought housing without preference to neighborhood, but were "steered" into all or predominantly white areas by defendant who actively sought their business. They further allege that such conduct by defendant will further segregate Cleveland Heights and directly affect the social and economic value of their home.

Plaintiff Muriel Jeffries is a black citizen presently residing in Cleveland Heights. Jeffries also sought housing[1] without preference to neighborhood and was shown listings in racially mixed areas only by defendant who displayed minimal interest in the prospective business. Jeffries similarly alleges that continued racial steering will result in the segregation of Cleveland Heights with its resulting effect on the social and economic value of the homes in the area.

The action is sought to be maintained as a class action pursuant to Rules 23(b)(2) and 23(b)(3) F.R.C.P. The members of the class sought to be represented by plaintiffs Gricar are "all whites steered out of Cleveland Heights from their neighborhood and all whites deprived of their continued right to interracial associations by the cumulative impact of showing mostly blacks in segregating certain racially integrated neighborhoods in Cleveland Heights." The membership of this class is approximated at one thousand (1000). The members of the class sought to be represented by plaintiff Jeffries are "all blacks steered away from predominately white areas and into racially integrated neighborhoods in Cleveland Heights which deprive their class their continued rights to interracial associations by the cumulative impact of showing mostly blacks in segregating certain neighborhoods in Cleveland Heights." The membership of this class is approximated at five hundred (500).

Defendant Rosenblatt Realty, Inc. ("Rosenblatt") is an Ohio corporation licensed to

---

1. Plaintiff Evelyn Bradshaw was withdrawn as a party by plaintiff's own motion.

engage in the sale of real estate whose practice extends beyond the geographical boundaries of Cleveland Heights. The remaining individual defendants are alleged to be either officers or agents of the defendant corporation.

The congress has allegedly continually scrutinized the real estate activity of defendants from June 9, 1973 until the time of the filing of the instant action.[2] Defendants are alleged to be engaged in a continuous pattern and practice of racial "steering" whereby whites are induced to purchase homes in predominantly white areas in and around Cleveland Heights while blacks are induced to purchase homes in areas already racially integrated. Plaintiffs also note the disparate quality of service rendered by defendants based on the race of potential clients.

Plaintiffs seek basically to enjoin the defendants from any conduct that has the purpose or effect of promoting racial residential segregation or interfering with the exercise of equal housing opportunities. A declaratory judgment that the conduct complained of is violative of the Fair Housing Act of 1866, and the Thirteenth Amendment is also sought by plaintiffs. Finally, actual damages of $350,000 and punitive damages of $650,000 as well as reasonable attorney's fees are prayed for.

Defendants challenge the standing of the congress to bring the present action based upon the allegations contained in the complaint as well as the propriety of the case proceeding as a class action. The defendants also argue that plaintiffs have not yet exhausted their administrative remedies since the City of Cleveland Heights has initiated a voluntary cooperative plan for reviewing complaints against the real estate industry.

██ With regard to defendants' assertion that the present action should be dismissed as to the congress because they lack the capacity to sue, such dismissal would be warranted only if it appears that the plaintiff can "prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). This would appear to be especially true when presented with alleged violations of the Civil Rights Acts since courts should be alert to effectuating the remedial purpose of such legislation.

"A case brought under the Civil Rights Act should not be dismissed at the pleading stage unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim. *Scher v. Board of Education of West Orange*, 424 F.2d 741, 744 (3d Cir. 1970)." *Azar v. Conley*, 456 F.2d 1382, 1391 (6th Cir. 1972).

At the outset it should be noted that with regard to the Fair Housing Act courts have shown little reluctance to construe both its proscriptions and grant of standing in the broadest manner possible. In *United States v. Youritan Construction Co.*, 370 F.Supp. 643 (N.D.Cal.1973) the prohibitions contained in 42 U.S.C. § 3604(a) where characterized

"to be as broad as Congress could have made it, and all practices which have the effect of denying dwellings on prohibited grounds are therefore unlawful." 370 F.Supp. at 648.

The intent of Congress to foster equal housing opportunities has been found in legislation that appears directed at other forms of discrimination. In *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1962) 42 U.S.C. § 1982 was held to bar

"all racial discrimination, private as well as public; in the sale or rental of property, and that the statute, thus construed, is a valid exercise of the power of Con-

---

2. According to defendants' reply brief, the congress formed a "housing task force" in May or June, 1973, for the purpose of scrutinizing defendants' real estate activity. Eleven "matched pairs" of "auditors" feigned interest in real estate that was identical as to price range, neighborhood, etc. All contact between the auditors and defendants was recorded on the congress' specially prepared forms.

gress to enforce the Thirteenth Amendment." 392 U.S. at 413, 88 S.Ct. at 2189.

■ Plaintiff Heights Community Congress claims that it has been damaged in that "the conduct of the defendant directly obstructs, frustrates and damages the congress in achieving its objective by impeding the processes which are used to benefit the entire community of Cleveland Heights. . . ." Here, as in *Park View Heights Corp. v. City of Black Jack*, 467 F.2d 1208 (8th Cir. 1972),

"The determination required . . . is whether or not the interest of the individual plaintiffs to be free from discriminatory housing practices . . . is *sufficiently close* to the interests of Park View and ICUA to give the latter standing." 467 F.2d at 1213.

In *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972) the Supreme Court broadly construed the meaning of an "aggrieved person" as contained in 42 U.S.C. § 3610(a):

"We can give vitality to § 810(a) only by a generous construction which gives standing to sue to all in the same housing unit who are injured by racial discrimination in the management of those facilities within the coverage of the statute." 409 U.S. at 212, 93 S.Ct. at 368.

More explicitly the Court found:

"a congressional intention to define standing as broadly as is permitted by Article III of the Constitution . . . insofar as tenants of the same housing unit that is charged with discrimination are concerned." 409 U.S. at 209, 93 S.Ct. at 367.

Thus all the members of the housing unit were possessed of standing to allege injury resulting from the "loss of important benefits from interracial associations," 409 U.S. at 210, 93 S.Ct. at 367.

This court has utilized the holding of *Trafficante* to approve a grant of standing to white citizens to oppose discrimination directed at blacks:

"Accordingly, it would not be an unreasonable extension of *Trafficante*, and well within its spirit, to rule that white

residents of a city like Parma . . . could challenge, under the Fair Housing Act, any purported racially exclusionary activity pursued by the City." *Cornelius v. City of Parma*, 374 F.Supp. 730, 741 (N.D.Ohio 1974), *rev'd on other grounds*, 506 F.2d 1400 (6th Cir. 1974).

See also, *Tokaji v. Toth*, No. C73–1142 (N.D. Ohio January 7, 1974).

In *TOPIC v. Circle Realty Co.*, 377 F.Supp. 111 (C.D.Cal.1974) an unincorporated association similar in nature to the plaintiff in the present case brought an action against several real estate firms to redress alleged "racial steering." In acknowledging the association's standing to sue, *Trafficante* was found analogous:

"The Court's language pre-supposes some outer limits to the rule enunciated, but the situations in the two cases are so similar there seems to be no just reason for setting such limits short of the facts of the case before this court." 377 F.Supp. at 114.

\* \* \* \* \* \*

If any of the 8,200 residents of an apartment complex can be injured by virtue of the loss of important benefit from interracial associations surely the residents of the . . . community can and do suffer similar deprivations." 377 F.Supp. at 114.

See also, *Village of Park Forest v. Fairfax Realty*, No. 74 C–2862 (N.D.Ill. January 28, 1975). Thus plaintiff Heights Community Congress has standing to sue under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* For this reason it is unnecessary to reach the question of the congress' standing to sue under 42 U.S.C. § 1982, see *Trafficante, supra*, 409 U.S. at 209 n. 8, 93 S.Ct. 364.

■ Having determined the issue of standing it is necessary to ascertain the propriety of maintaining the present action as a class action. For the purposes of a hearing on preliminary injunctive relief class certification may be provisional, Rule 23(c)(1) F.R.Civ.P.

■ The first requirement of Rule 23(a) F.R.Civ.P., that the class be so numerous as

to make joinder impracticable, is satisfied in the present case:

> "In civil rights cases of the nature of the present case, the numerosity requirement is usually satisfied by the showing of a colorable claim by the named plaintiff who is a member of a larger class having potentially similar claims." *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974).

Similarly there exists a commonality of questions of law or fact applicable to the class:

> "Since a permeating policy of racial discrimination is alleged, there can be little doubt that there are questions of law and fact common to all class members . . . ." *Mack v. General Electric Co.*, 329 F.Supp. 72, 76 (E.D.Pa.1971).

See also *Tipler v. E. I. duPont deNemours & Co.*, 443 F.2d 125, 130 (6th Cir. 1971).

In addition the claims of the representative parties appear typical of the claims of the class and the representative parties will fairly and adequately protect the interests of the class.

> "In the present suit, where it is unlikely that segments of the class [plaintiff] represents would have interests conflicting with those [plaintiff] has sought to advance, and where the interests of that class have been competently urged at each level of the proceeding we believe that the test of Rule 23(a) is met." *Sosna v. State of Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975).

Thus the instant action may proceed as a class action. It is now necessary to define the class or classes which plaintiffs represent.

Plaintiff Heights Community Congress represents:

> "All residents of Cleveland Heights who have been deprived of the benefits of interracial association as a result of the defendants conduct."

Plaintiffs Gricar may continue this action on behalf of:

> "All whites who have been 'steered' out of Cleveland Heights from their neighborhood and all whites deprived of their continued right to interracial associations by the cumulative impact of the selective and racially motivated showing of real estate in segregating certain racially integrated neighborhoods in Cleveland Heights."

Plaintiff Jeffries represents:

> "All blacks steered away from predominantly white areas and into racially integrated neighborhoods in Cleveland Heights which deprive their class their continued rights of interracial associations by the cumulative impact of the selective and racially motivated showing of real estate in segregating certain neighborhoods in Cleveland Heights."

The certification of the above classes is "conditional, and may be altered or amended before the decision on the merits," Rule 23(c)(1) F.R.Civ.P.

The class aspects of this action are brought pursuant to Rule 23(b)(2) and (b)(3) F.R.Civ.P.

> "In attempting to define a (b)(2) class, it should be noted that the category may in some instances be quite broad in scope. The nature of the primary relief sought in this category, injunctive or declaratory relief, does not require that the class be as narrowly confined as under (b)(1) or (b)(3). Of course, some or all members of a (b)(2) class may seek additional relief, for example monetary damages . . ." *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974).

With regard to plaintiffs' prayer for damages, several additional considerations become manifest. The enforcement provisions of the Fair Housing Act, 42 U.S.C. §§ 3610 and 3612, require that an action under those sections be brought within 180 days of the alleged discriminatory housing practice. Although any discussion of damages maybe premature, it might well become necessary in order to assess such damages to create sub-classes out of the classes represented by plaintiffs Gricar and Jeffries consisting of those whites and blacks "steered" by defendants during the 180 day

period prior to the filing of the instant action.

 Another important factor is the notice requirement of Rule 23(c)(2). Since plaintiffs seek also to proceed in accordance with Rule 23(b)(3):

> "Individual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, 94 S.Ct. 2140, 2150, 40 L.Ed.2d 732 (1974).

\*     \*     \*     \*     \*     \*

> "By its terms subdivision (c)(2) is inapplicable to class actions for injunctive or declaratory relief maintained under subdivision (b)(2)." *Eisen, supra* at 177 n. 14, 94 S.Ct. at 2152.

The resolutions of these considerations can await the further development of the action as it approaches a trial on the merits.

> "[A]lthough a class action seems appropriate at this time, subsequent development of the facts might indicate otherwise, thus eliminating the necessity of any notice. Then, too, discovery proceedings, which presently are far from completed, and other pre-trial matters  . . should be developed further before notice is sent out,  .  .  ." *Fischer v. Kletz*, 41 F.R.D. 377, 386 (S.D.N.Y.1966).

The postponement of notice to the class would appear not to prejudice its absentee members but "the delay in the parties' making application regarding notice should not be overly prolonged," *Wolfson v. Solomon*, 54 F.R.D. 584, 593 (S.D.N.Y.1972).

 Defendants' contention that plaintiffs must avail themselves of the grievance procedure outlined in the Cleveland Heights voluntary cooperative plan as a condition precedent to asserting their rights under the Fair Housing Act is without merit and warrants no further discussion.

For the reasons set forth above plaintiffs' motion for class certification is provisionally granted. Defendants' motion to dismiss this action as a class action or alternatively for an order requiring the plaintiffs to identify the class members and give them individual notice is denied subject to renewal at a later time.

IT IS SO ORDERED.