Zenobia TURNER et al.

v.

A. B. CARTER, INC., etc., et al.

and

Paul Allen COLES

v.

HAVENS REALTY CORPORATION
et al.

and

Jennifer E. THOMAS et al.

v.

PAUL GORDON ASSOCIATES, INC.
et al.

and

Zenobia TURNER et al.

v.

W. D. NELSON & COMPANY, INC.
et al.

and

Patricia JONES et al.

v.

JOSEPH A. LANGE REAL ESTATE
et al.

and

Leon THORNTON et al.

v.

TEPPER BROTHERS REALTY.

Civ. A. Nos. 78–1071–R, 79–0024–R,
79–0070–R, 79–0072–R, 79–0111–R
and 79–0112–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Feb. 13, 1980.

Patrick M. McSweeney, McSweeney & Stutts, Richmond, Va., for plaintiffs in Nos. 78–1071–R, 79–0070–R and 79–0112–R.

James F. Stutts, McSweeney & Stutts, Richmond, Va., Theodore C. Hirt, Fried, Frank, Harris, Shriver & Kampelman, Washington, D. C., for plaintiffs in all cases.

Malcolm M. Christian, Christian, House, Benedetti & Lubman, Richmond, Va., for defendant in No. 78–1071–R.

James F. Pascal, Hirschler, Fleischer, Weinberg, Cox & Allen, Richmond, Va., for defendants in No. 79–0070–R.

Richard W. Hogan, Hirschler, Fleischer, Weinberg, Cox & Allen, Richmond, Va., for defendants in No. 79–0024–R.

Dennis W. Dohnal, Bremner, Baber & Janus, Richmond, Va., for defendants in Nos. 78–1072–R and 79–0111–R.

Robert G. Cabell, Jr., White, Cabell, Paris & Lowenstein, and G. Warthen Downs, Richmond, Va., for defendants in No. 79–0112–R.

## MEMORANDUM

WARRINER, District Judge.

On 26 September 1979 the Court entered an order in the seven consolidated HOME cases granting to plaintiffs in six of those cases[1] an extension of time for class discovery of 45 days to seek information with respect to numerosity and of 60 days to file their motions for class designation.[2] Plaintiffs have tendered such a motion accompanied by a brief. Defendants have responded and the time for rebuttal has passed. The class discovery motions are ripe for disposition.

The Court finds that the information on numerosity adduced by the plaintiffs is sufficient to show that the requirement is satisfied with respect to the claims asserted against each defendant. Accordingly, a plaintiff class will be certified in each of the above-captioned actions. Separate certification orders will issue in accordance with this memorandum.

With respect to the several actions, the class boundaries deserve comment. The parties plaintiff in these six cases,[3] as spe-

---

[1] On 20 December 1979, following the submission to the Court of briefs and affidavits setting forth information satisfying the criteria of *Shelton v. Pargo*, 582 F.2d 1298, 1314–16 (4th Cir. 1978), the case of *Young v. Rucker & Richardson, Inc.*, No. 79–0071–R (E.D.Va. filed Jan. 19, 1979), was dismissed pursuant to Rule 41(a) of the Federal Rules of Civil Procedure.

[2] Plaintiffs, on 13 November 1979, filed class-related interrogatories; this date being the last date permitted for the pursuit of class-related discovery, such interrogatories could not possibly have been answered by the date plaintiff's motion for class certification was due. *See* Initial Pre-Trial Order ¶ 13. As a result, plaintiffs' motion and brief related to facts which had been disclosed through discovery months before and which had been available, although inadequately developed, at the time of plaintiffs' original motion for class certification. This apparent ineptitude gives the Court pause to consider the advisability of proceeding to certify a class. Be that as it may, the Court can of course, revoke, alter, or modify the present ruling at a later point in the proceedings, should such be necessary. Fed.R.Civ.P. 23(c), (d).

[3] The complaint in the case of *Turner v. A. B. Carter, Inc.*, No. 78–1071–R (E.D.Va., filed Dec. 22, 1978), lists five representative plaintiffs: Zenobia Turner, a black renter plaintiff, Jennifer E. Thomas, a black renter plaintiff, Sylvia Coleman, a black tester plaintiff, Linda Harmes, a white tester plaintiff, and Housing Opportunities Made Equal (hereinafter HOME), a non-profit association incorporated under the laws of the Commonwealth of Virginia whose multiracial membership is dedicated to the elimination of unlawful racial discrimination in residential housing in the Richmond, Virginia, metropolitan area. These plaintiffs seek to represent "a class composed of all persons who have rented or sought to rent residential property in the City of Richmond, Virginia since December 25, 1976 and who have been, or continue to be, adversely affected" by the defendants' alleged racial steering practices.

cifically designated in the accompanying orders, will be certified to represent a plaintiff class and subclass consisting entirely of black persons who have suffered monetary injury as a result of the defendants' alleged racial steering practices within the appropriate statutory period.[4] Under the present state of the record no class or subclass will be certified to include white persons allegedly suffering from the racial steering practices of the defendants as no party plaintiff is present whose claims would be typical of such a class. The absence of typicality brings into question adequate representation of a class of white persons. These summarizations of the Court's opinion will be examined more fully hereinbelow.

In its present posture, the case of *Coles v. Havens Realty Corp.*, No. 79–0024–R (E.D.Va. filed Jan. 9, 1979), presents a single plaintiff, Paul Allen Coles, a black renter plaintiff who seeks to represent "a class composed of all persons who have rented or sought to rent residential property in Henrico County, Virginia, and who have been, or continue to be, adversely affected" by the defendants' racial steering practices. In *Coles*, by order entered 16 February 1979, this Court dismissed, as parties plaintiff Sylvia Coleman, R. Kent Willis, and HOME, for failure to state a claim upon which relief could be granted. Final judgment was entered as to the claims of these plaintiffs on 7 March 1979. These plaintiffs thereafter perfected an appeal of that judgment. On 31 December 1979, this Court entered a Formal Request to the United States Court of Appeals for the Fourth Circuit, pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, seeking the remand of this action in light of *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979).

The complaint in the case of *Thomas v. Paul Gordon Assoc., Inc.*, No. 79–0070–R (E.D.Va. filed Jan. 17, 1979), lists four representative plaintiffs: Jennifer E. Thomas, a black renter plaintiff, Sylvia Coleman, a black tester plaintiff, John Barr, a white tester plaintiff, and HOME, a Virginia non-profit corporation. These plaintiffs seek to represent "a class composed of all persons who have rented or sought to rent residential property in the City of Richmond and Henrico County, Virginia, and who have been, or continue to be, adversely affected" by the defendants' racial steering practices.

The complaint in the case of *Turner v. W. D. Nelson & Co.*, No. 79–0072–R (E.D.Va. filed Jan. 19, 1979), lists five representative plaintiffs: Zenobia Turner, a black renter plaintiff, Sylvia Coleman, a black tester plaintiff, Arthur Kreiger, a white tester plaintiff, John Barr, a white tester plaintiff, and HOME, a Virginia non-profit corporation. These plaintiffs seek to represent "a class composed of all persons who have rented or sought to rent residential property in the City of Richmond, Virginia who have been, or continue to be, adversely affected" by the defendants' racial steering practices.

The complaint in the case of *Jones v. Joseph A. Lange Real Estate*, No. 79–0111–R (E.D.Va., filed Feb. 5, 1979), lists three representative plaintiffs: Patricia Jones, a black renter plaintiff, Sylvia Coleman, a black tester plaintiff, and HOME, a Virginia non-profit corporation. These plaintiffs seek to represent "a class composed of all persons who have rented or sought to rent residential property in the City of Richmond, Virginia, who have been, or continue to be, adversely affected" by the defendants' racial steering practices.

The complaint in the case of *Thornton v. Tepper Brothers Realty*, No. 79–0112–R (E.D.Va. filed Feb. 5, 1979), lists five representative plaintiffs: Leon Thornton, a black renter plaintiff, Brenda Lee, a black renter plaintiff, Sylvia Coleman, a black tester plaintiff, and HOME, a Virginia non-profit corporation. These plaintiffs seek to represent "a class composed of all persons who have rented or sought to rent residential property in the City of Richmond and Henrico County, Virginia, and who have been, or continue to be, adversely affected" by the defendants' racial steering practices.

None of these described actions lists, as representative or individual party plaintiffs, a single white renter plaintiff who seeks to represent a class of all white persons in the Richmond, Virginia, metropolitan area who have suffered injury as a result of the defendants' alleged racial steering practices.

4. The plaintiff class is to be limited to those persons, who, within the relevant statutory period, suffered monetary injury; as the Court noted in its ruling of 26 September 1979, the instant cases present classes for certification under Rule 23(b)(2) where the injunctive relief demanded will be effectuated class-wide by the granting of relief to a single plaintiff. Certification for injunctive relief in such a case is unnecessary. *Sandford v. R. L. Coleman Realty Co.*, 573 F.2d 173, 178 (4th Cir. 1978). Thus, only ancillary monetary relief remains to be accorded plaintiff class members via the class action device. *Robinson v. Lorillard Corp.*, 444 F.2d 791, 802 (4th Cir.), *cert. dismissed*, 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971); *Paxman v. Wilkerson*, 390 F.Supp. 442, 449 (E.D.Va.1975). Should subsequent discovery or other inquiry reveal that the monetary damage claims are insubstantial, the Court may revoke the certification as improvidently granted. Fed.R.Civ.P. 23(c), (d); *cf. Lukenas v. Bryce's Mountain Resort, Inc.*, 538 F.2d 594, 595–96 (4th Cir. 1976).

I

Rule 23 of the Federal Rules of Civil Procedure provides, in pertinent part, that [o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if . . . (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a)(3), (4).

In considering whether the typicality requirement has been met, the emphasis of the Court's examination is on the square alignment of the class representative's interests with the interests of the class. *See* 1 H. Newberg, Class Actions § 1115a (1977). Although a plaintiff's claim will be considered typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and his or her claims are based on the same legal theory," 1 H. Newberg, *supra* at § 1115b p. 185; *Gerstle v. Continental Airlines, Inc.*, 50 F.R.D. 213, 219 (D.Colo.1970), *aff'd. on other grounds*, 466 F.2d 1374 (10th Cir. 1972), Rule 23(a)(3) typicality may "screen out class actions [or class representation] when the legal or factual position of the representatives is markedly different from that of other members, even though common issues of law or fact are raised." 7 C. Wright & A. Miller, Federal Practice and Procedure § 1764 (1972 & Supp. 1979).

▆▆▆ To be deemed an adequate representative of a class, a party must meet several criteria: plaintiff's attorney must be professionally competent to conduct the particular litigation, *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 247 (5th Cir.), *cert. denied* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975), and the interests of the representative must neither be in conflict with nor antagonistic to those of the class as a whole. *Barnett v. W. T. Grant Co.*, 518 F.2d 543, 548 (4th Cir. 1975), *as limited by Hill v. Western Electric Co.*, 596 F.2d 99, 102 (4th Cir.), *cert. denied* 444 U.S. 929, 100 S.Ct. 271, 62 L.Ed.2d 186 (1979); *Wetzel v. Liberty Mutual Insurance Co., supra.* The antagonism between the representative party and the class which must be present before the certification will be denied is that which goes "to the subject matter of the suit." 5 H. Newberg, *supra* at § 8675d p. 548 (citations omitted). To ensure the absence of such conflict between the class and the representative the "class representative must be part of the class and 'possess the same interest and suffer the same injury' as class members." *East Texas Motor Freight System v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977), *quoting Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 216, 94 S.Ct. 2925, 2929, 41 L.Ed.2d 706 (1974). *See* 7 C. Wright & A. Miller, *supra* at §§ 1768–69. Further, a representative party's claim should be co-extensive with those claims of the class he seeks to represent; this ensures the vigorous prosecution of the action by the representative which is implicit within the concept of Rule 23(a)(4) adequacy of representation. 1 H. Newberg, *supra* at § 1074. Thus, the Fourth Circuit recently held that a party may not "represent a class of people who suffered a different injury or those having similar claims but who [in the context of interfacility employment discrimination were] employed in other facilities." *Hill v. Western Electric Co., supra* at 102.[5]

---

5. The crucial question in a case where a class representative's adequacy of representation is at issue is the impact of a final judgment upon absent class members; absent class members who stand to be bound by the effect of a final judgment in a class action must be assured of representation which is of sufficient factual and legal identity with their own claims that principles of due process are not offended. Where a representative party's "substantial interests are not necessarily or even probably the same as those whom they are deemed to represent . . . [such representation] does not afford that protection to absent parties which due process requires." *Hansberry v. Lee*, 311 U.S. 32, 45, 61 S.Ct. 115, 119–120, 85 L.Ed. 22 (1940). *See Hill v. Western Electric Co., supra* at 101; *Roman v. ESB, Inc.*, 550 F.2d 1343, 1356 (4th Cir. 1976); *Barnett v. W. T. Grant Co., supra* at 547 n. 4; *Johnson v. Georgia Highway Express Inc.*, 417 F.2d 1122, 1125–27

Further, discrimination actions, *per se*, do not qualify automatically as class actions, but must meet the requirements of Rule 23 in the same manner as all other actions. *Shelton v. Pargo, supra* at 1312. Finally, the Court possesses broad discretion in determining whether, and if so under what circumstances, to allow the maintenance of a class action. *Roman v. ESB, Inc., supra* at 1348.

## II

Plaintiffs assert their claims of race-based injury in the rental of residential housing upon the Civil Rights Act of 1866, 42 U.S.C. § 1982,[6] and upon the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*[7] The

---

(5th Cir. 1969) (Godbold, J., concurring specially).

Regarding the adequacy of class representation of specific racial groups by non-members, *compare Wofford v. Safeway Stores, Inc.*, 78 F.R.D. 460, 490–91 (N.D.Cal.1978) (where minority female plaintiff in discrimination action claims that defendant impermissibly prefers whites over minorities and men over women, plaintiff may not represent separate classes of both minority men and white women due to inter-class antagonism), *and Rodrigues v. Pacific Tel. & Tel. Co.*, 70 F.R.D. 414, 416–17 (N.D. Cal.1976) (Portuguese American plaintiff not "Spanish surnamed", therefore inadequate representative of such a class where plaintiff not injured in same fashion as other minority class members), *with Jones v. Milwaukee County*, 68 F.R.D. 638, 640–41 (E.D.Wis.1975) (black plaintiffs may represent class containing other minority racial and ethnic groups in Title VII action), *and Ellis v. Naval Air Rework Facility, Alameda, Cal.*, 404 F.Supp. 391, 396 (N.D.Cal. 1975) (plaintiffs of black and chicano ancestry may adequately represent claims of minority workers including those of native American or Asian descent). *Also see Hernandez v. United Fire Ins. Co.*, 79 F.R.D. 419, 428 (N.D.Ill.1978) (Hispanic and black plaintiffs certified to represent class including whites where interests of whites were inseparably bound with those of minority members).

**6.** The Civil Rights Act of 1866, Act of April 9, 1866, ch. 31, § 1, 14 Stat. 27, re-enacted by § 18 of the Enforcement Act of 1870, Act of May 31, 1870, ch. 114, § 18, 16 Stat. 140, 144, and codified in §§ 1977 and 1978 of the Revised Statutes of 1874, now 42 U.S.C. §§ 1981 and 1982.

Section 1982 of Title 42 provides that
[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.
42 U.S.C. § 1982 (1978).
The Supreme Court has held unequivocally that § 1982 bars *all* racial discrimination, private as well as public, in the sale or rental of property . . . . .
*Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413, 88 S.Ct. 2186, 2189, 20 L.Ed.2d 1189 (1968) (emphasis in original).

A claim for relief under § 1982, in Virginia, is governed by the two-year statute of limitations for personal injury actions set forth in Va.Code § 8.01–243 (Repl. Vol. 1977). *Allen v. Gifford*, 462 F.2d 615 (4th Cir. 1972); *Brown v. Blake & Bane, Inc.*, 409 F.Supp. 1246, 1248 (E.D.Va. 1976).

**7.** 42 U.S.C. § 3604 provides that:
[a]s made applicable by section 803 [42 U.S.C. § 3603] and except as exempted by sections 803(b) and 807 [42 U.S.C. §§ 3603(b), 3607] it shall be unlawful—
(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, or national origin.
(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, or national origin.
(c) To make, print, publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, or national origin, or an intention to make any such preference, limitation, or discrimination.
(d) To represent to any person because of race, color, religion, sex, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.
(e) For profit, to induce or attempt to induce any person to sell or rent any dwelling by representations regarding the entry or prospective entry into the neighborhood of a person or persons of a particular race, color, religion, sex, or national origin.
42 U.S.C. § 3604 (1973 & Supp. 1979).
42 U.S.C. § 3612, provides, in pertinent part, that:
(a) [t]he rights granted by section 803, 804, 805 and 806 [42 U.S.C. §§ 3603–06] may be enforced by civil actions in appropriate United States district courts without regard to the amount in controversy and in appropriate State or local courts of general jurisdiction. A civil action shall be commenced within one

several plaintiffs in each one of these six separate actions are of diverse status.[8] Plaintiff HOME is a non-profit association whose multiracial membership is dedicated to the elimination of unlawful discrimination in residential housing in the Richmond, Virginia, metropolitan area. Each individual action also includes, as parties plaintiff, both tester and renter plaintiffs.[9]

### A

■■ The question of the standing of tester plaintiffs in housing discrimination cases to litigate racial steering claims asserted under the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.* as well as claims asserted under the Civil Rights Act of 1866, 42 U.S.C. § 1982, has not been resolved.

*Gladstone, Realtors v. Village of Bellwood, supra,* 441 U.S. at 111, 99 S.Ct. at 1614; *but see Wheatley Heights Neighborhood Coalition v. Jenna Resales Co.,* 429 F.Supp. 486, 488 (E.D.N.Y.1977) (tester plaintiffs state claim under 42 U.S.C. § 3604(b)). That question need not be resolved at this juncture in the pending actions. The issue of a plaintiff's standing to sue is separate and distinct from the issue of the adequacy of his representation of a class at the pre-trial certification stage.[10] 1 H. Newberg, *supra* at § 1072b. In the present context, it is clear to the Court that the tester plaintiffs do not possess injuries of sufficient typicality with those of the class they seek to represent to qualify the tester plaintiffs as

---

hundred and eighty days after the alleged discriminatory housing practice occurred

.  .  .  .

.    .    .    .    .

(c) The Court may grant as relief, as it deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order, and may award to the plaintiff actual damages and not more than $1,000 punitive damages, together with court costs and reasonable attorney fees in the case of a prevailing plaintiff: Provided, That the said plaintiff in the opinion of the court is not financially able to assume said attorney's fees.

42 U.S.C. § 3612 (1973).

*Jones v. Joseph A. Lange Real Estate,* No. 79–0111–R (E.D.Va., filed Feb. 5, 1979), is brought solely under 42 U.S.C. § 1982 and does not allege a claim for relief under the Fair Housing Act.

8. *See* note 3, *supra.*

9. A "tester" plaintiff may be defined, for the purposes of this action as a person who through pretense has sought information from a lessor or real estate agency concerning the availability of residential rentals without a good faith intent to actually lease available property, but rather with the goal in mind of developing evidence for use in a later prosecution of a racial discrimination claim. A "renter" plaintiff, conversely, is a person who has sought residential rental information from a lessor or real estate agency with the good faith intent, at the time, to actually lease an available parcel of property.

10. In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its

exercise. In both dimensions it is founded in concern about the proper—and properly limited—role of the courts in a democratic society.

In its constitutional dimension, standing imports justiciability . . . the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. . . . A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action. . . .'

*Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (citations omitted).

The issue of a class representative's adequacy under Rule 23(a)(4) assumes that the class representative fully satisfies constitutional and prudential standing doctrines.

Though there is no additional standing requirement for the plaintiff who seeks to represent a class, a proper class action requires a *similarity of claims* between the named plaintiff and the class members. This similarity of claims is tested, not by principles of standing, but by the application of Rule 23(a)(3) criteria. If a class action is proper, then by definition the class representative's claims *will be typical of the class.* Thus, the class plaintiff's individual standing, linked to his or her asserted claim, becomes automatically linked to class claims. Having standing which a class representative 'shares' with the members of a class is another way of saying that the class representative is a proper party to raise a particular issue common to the class.

1 H. Newberg, *supra* at § 1072b pp. 124–25.

adequate class representatives. Whatever injury a tester plaintiff may suffer under §§ 1982 and 3604 by virtue of or attendant to his intelligence-gathering activities, this injury is qualitatively different from the injury allegedly suffered by the instant class members.

A class member who has been racially steered by a defendant and who, as a result, has rented an apartment in a racially segregated residential area suffers a distinctly different injury from that which may be suffered by a person employed simply to gather information regarding discriminatory housing practices of real estate agencies. Such difference goes to the nature and to the type of injury. An injured renter plaintiff has allegedly been denied an opportunity to rent a dwelling because of his race, thereby resulting in his living in a segregated neighborhood to his detriment; a tester plaintiff asserting a claim for relief based upon racial steering, if successful in surmounting standing challenges, may likely claim only that he has been denied only the "provision of services" because of his race, as the tester plaintiff has no intent whatsoever to rent a dwelling from the person or agency he questions. *Compare* 42 U.S.C. § 3604(a) *with* 42 U.S.C. § 3604(b). *See Wheatley Heights Neighborhood Coalition v. Jenna Resales Co., supra.* As a different injury, if injury at all, accrues to a tester plaintiff from that which accrues to a renter plaintiff, such difference will preclude his designation by the Court as a class representative for those claiming monetary damage from being steered into a racially segregated neighborhood. *See Hill v. Western Electric Co., supra.*

## B

The standing of an association, such as HOME, to sue on behalf of itself or on behalf of injured members has been addressed squarely by the Supreme Court. *Gladstone, Realtors v. Village of Bellwood, supra; Warth v. Seldin, supra* at 510–11; [11] *see also Heights Community Congress v. Rosenblatt Realty, Inc.,* 73 F.R.D. 1, 2–5 (N.D.Ohio 1975). Despite these holdings that an association may surmount the hurdle of standing to sue, this legal status does not necessarily imply that the association has suffered injury which is typical of that suffered by class members. This possible untypicality calls into question the adequacy of the association as a class representative. 1 H. Newberg, *supra* at § 1072b.

Plaintiff HOME in five of the above captioned actions [12] alleges associational and membership injury.[13] Despite these allega-

---

**11.** There is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy. Moreover, in attempting to secure relief from injury to itself the association may assert the rights of its members, at least so long as the challenged infractions adversely affect its members' associational ties. . . . Even in the absence of injury to itself, an association may have standing solely as the representative of its members. The possibility of such representational standing, however, does not eliminate or attenuate the constitutional requirement of a case or controversy. The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit. So long as this can be established, and so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party

indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction.
*Warth v. Seldin, supra,* 422 U.S. at 511, 95 S.Ct. at 2211–2212 (citations omitted).

**12.** *See* note 3, *supra.*

**13.** Plaintiff HOME typically alleges that it has been frustrated by defendants' racial steering practices in its efforts to assist equal access to housing through counseling and other referral services. Plaintiff HOME has had to devote significant resources to identify and counteract the defendants' racially discriminatory steering practices. HOME members have, as a result of defendants' practices, been deprived of the right to the important social, professional, business and economic, political and aesthetic benefits of interracial associations that arise from living in integrated communities free from discriminatory housing practices, in violation of the Fair Housing Act of 1968, 42 U.S.C. § 3601 *et seq.*

tions it is the opinion of the Court and the holding of the Court accordingly that HOME has suffered an injury qualitatively different from that suffered in general by class members. Class members claim injury resulting from the defendants' alleged racial steering practices. Assuming the facts to be as alleged, putative class members were steered into and may have thereby rented a dwelling in a racially segregated neighborhood thus suffering injuries under the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. § 1982. Plaintiff HOME, on the other hand, has been "frustrated . . . in its efforts to assist equal access to housing. . . ." *Thomas v. Paul Gordon Associates, Inc.*, No. 79–0070–R, complaint at 8 (E.D.Va., filed Jan. 17, 1979). HOME does not allege that it has itself been the subject of race discrimination in the residential housing market. HOME further alleges, however, that its constituent members have suffered individual injuries by virtue of the complained of acts of the defendants. Allegations of membership and associational injury germane to the nature of the suit, whatever their significance upon the standing to sue of an association, *see Huertas v. East River Housing Corp.*, 81 F.R.D. 641, 647 (S.D.N.Y.1979), do not draw the injuries sustained by the association into square alignment with the injuries suffered by the class. Such alignment is required by Rule 23(a)(3) typicality. Therefore, the Court will decline to designate plaintiff HOME as a representative of the plaintiff classes which will hereinafter be certified. *See Hill v. Western Electric Co., supra.*

## C

■ Renter plaintiffs in these separate actions [14] clearly meet the standing requirements and individually possess injuries co-extensive with those of the class and of the subclass they seek to represent.[15] The renter plaintiffs therefore appear to be adequate class representatives in accordance with the principles set forth above; plaintiffs' counsel appear to be competent to conduct the instant type of litigation; no antagonisms appear to be present between the class and the representative parties; and the injuries alleged by the renter plaintiffs are co-extensive with those suffered by the class. Therefore, as specifically provided in the orders which issue this day, these plaintiffs will be designated as representatives of a class and subclass composed of black persons who have been injured monetarily within the relevant statutory periods by the alleged racial steering practices of the defendants.

## III

The Court will certify a class and subclass to include only black persons who have alleged injuries arising out of racial discrimination in residential housing in the Richmond metropolitan area. The Court finds that black renter class representatives would inadequately represent a class or subclass drawn to include white persons due to an absence of typicality between the positions maintained by the racial sub-groups.[16]

See e. g., *Thomas v. Paul Gordon Associates, Inc.*, No. 79–0070–R, complaint at 8 (E.D.Va., filed Jan. 17, 1979).

14. *See* note 3, *supra.*

15. In *Thornton v. Tepper Brothers Realty*, No. 79–0112–R (E.D.Va., filed Feb. 5, 1979), Thornton, a black renter plaintiff, will not be certified as a class representative to represent a subclass of black persons injured within the 180-day statutory period of the Fair Housing Act. Plaintiff Thornton, from the face of the complaint, asserts a racially motivated housing discrimination claim based upon events transpiring on 14 and 15 March 1978. Such a claim is clearly without the statutory period set forth by the Fair Housing Act. *See* 42 U.S.C. § 3612. Not possessing a claim under the Fair Housing Act, plaintiff Thornton would be an inadequate representative for plaintiffs having claims arising under the Act.

16. This decision avoids the necessity for the Court to consider whether § 1982 is applicable to and creates a cause of action in white persons based upon the allegations of racial steering in the instant cases. *See Gladstone, Realtors v. Village of Bellwood, supra*, 441 U.S. at 116 n. 33, 99 S.Ct. at 1616 n. 33; *Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 209 n. 8, 93 S.Ct. 364, 367 n. 8, 34 L.Ed.2d 415 (1972). *See also Runyon v. McCrary*, 427 U.S.

Class actions often proceed with broad racial groupings. 5 H. Newberg, *supra* at § 8685c p. 583. *See Chappelle v. E. I. DuPont Demours & Co.*, 75 F.R.D. 74, 79 (E.D.Va.1977); *Heights Community Congress v. Rosenblatt Realty, Inc., supra* at 5; *Marshall v. Electric Hose and Rubber Co.*, 68 F.R.D. 287, 290 (D.Del.1975); *Stewart v. Waller*, 404 F.Supp. 206, 213 (N.D.Miss. 1975); *Richmond Black Police Officers Association v. City of Richmond*, 386 F.Supp. 151, 158 (E.D.Va.1974). In a proper case color would be no barrier. Indeed in each of the cases now before the Court, the representative plaintiffs purport to present the interests of all persons, black and white, in the pursuit of injunctive and ancillary monetary relief. There is not included in the plaintiffs' lineup, however, a white renter plaintiff alleging a racial steering injury suffered at the hands of the defendants. The Court, mindful of the economies of the class device, is not so enamored of efficiency as to plunge into a class action where a serious question is present as to the typicality of the claims raised by the instant class representatives *vis a vis* the classes proposed by the plaintiff. Lack of sufficient Rule 23(a)(3) typicality implicates directly a lack of Rule 23(a)(4) adequate representation; lack of adequate representation raises due process issues concerning the *res judicata* effect of a final judgment in a class action upon absent class members.[17] Therefore, although there is precedent which indicates there is no legal or theoretical bar to the representation of one racial group by another, this Court will decline to certify such a class in the interest of a final judgment secure from subsequent collateral attack by absent white (or conceivably black) class members who may later seek to assert their rights, such as they may be.

Appropriate orders shall issue.

160, 171, 96 S.Ct. 2586, 2594, 49 L.Ed.2d 415 (1976); *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 287–96, 96 S.Ct. 2574, 2582–2586, 49 L.Ed.2d 493 (1976); *Jones v. Alfred H. Mayer Co., supra; Lamb v. Sallee*, 417 F.Supp. 282, 286 (E.D.Ky.1976); *Spiess v. C. Itoh & Co. (America)*, 408 F.Supp. 916, 927–

29 (S.D.Tex.1976); *Williamson v. Hampton Management Co.*, 339 F.Supp. 1146, 1147 (N.D. Ill.1972); *Terry v. Elmwood Cemetery*, 307 F.Supp. 369, 372 (N.D.Ala.1969); *Walker v. Pointer*, 304 F.Supp. 56, 60 (N.D.Tex.1969).

