SHERMAN PARK COMMUNITY ASSOCIATION; Jo Ella and Peter Adams; Anne Channell; Maureen and Patrick Coffey; Dick Conte; Beverly Davis; Jean and Fred Freiberg; Robert Griffin; Josephine and Douglas Holton; Rita and Michael Hurley; Janice Jackson; Cathryn and Howard Kainz; Mary and Raymond Kremer; Kevin Lynch; Mary and Geoffrey McCreary; Kathleen and Francis Mulvey; Betty and Clarence Nicholas; Anita Redding; Ruben Rosen; Joan and Ryan Sattler; Sharon and Schuyler Seager; Joyce and Samuel Tanner; Kathleen Thompson; Teresa and Edward Valent; Liesel and Edward Van Der Heiden, Individually and on behalf of others similarly situated, Plaintiffs,

v.

WAUWATOSA REALTY CO., Keske Realty, Inc., and Relocation Realty, Inc., Defendants.

Civ. A. No. 77–C–541.

United States District Court, E. D. Wisconsin.

March 31, 1980.

Percy L. Julian, Jr., Madison, Wis., James A. Walrath, Milwaukee, Wis., Jack Greenberg, Beth Lief and Patrick O. Patterson, New York City, for plaintiffs.

John R. Dawson, Robert L. Binder and David A. Baker, Milwaukee, Wis., for defendant, Wauwatosa Realty Co.

Mark M. Camp, Wauwatosa, Wis., for defendant, Keske Realty, Inc.

Donald A. Schoenfeld, Milwaukee, Wis., for defendant, Relocation Realty, Inc.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

### I. *INTRODUCTION*

This is an action for declaratory and injunctive relief and money damages brought by the Sherman Park Community Association ("SPCA") and numerous named individuals. Defendants are all Milwaukee area real estate companies. Plaintiffs allege that defendants have engaged in illegal discrimination in the form of racial steering in the sale and rental of real estate. Such practices are said to violate 42 U.S.C. §§ 1981 and 1982 and the Fair Housing Act of 1968, 42 U.S.C. § 3601 et seq. Currently before the court are defendant Wauwatosa Realty Company's motion for judgment on the pleadings and plaintiffs'

motion for class certification. Also before the court are plaintiffs' motions to compel discovery.

## II. MOTION FOR JUDGMENT ON THE PLEADINGS

### A. Introduction

Defendant Wauwatosa Realty Company ("Wauwatosa") raises two grounds in support of its motion for judgment on the pleadings. First, it argues that plaintiffs do not have standing to challenge the practices of the defendant real estate companies. Second, it argues that plaintiffs have failed to state a cause of action with respect to the allegations that have been made concerning Wauwatosa. Before considering the merits of these arguments, the Court must review the allegations contained in plaintiffs' amended complaint, as those allegations must be taken as true and construed in the light most favorable to the plaintiffs. *Chi-Mil Corp. v. W. T. Grant Co.*, 70 F.R.D. 352, 358 (E.D.Wis.1976).

Plaintiff SPCA is a nonprofit corporation, organized under the laws of Wisconsin, which is devoted, among other things, to the promotion of integrated housing in the Milwaukee area. The primary area serviced by the SPCA is the Sherman Park area which is bounded by North 35th Street on the east, North 60th Street on the west, Keefe Avenue on the north, and North Avenue on the south. Plaintiffs allege that the Sherman Park area is integrated but that the remaining residential areas in the City of Milwaukee and surrounding suburbs are primarily segregated.

Plaintiffs attribute this pattern of housing segregation in part to the discriminatory practices followed by the defendant real estate companies. The specific practices cited by plaintiffs are listed in paragraph 24 of the amended complaint:

"a. refusing to show and/or discouraging black or interracial homeseekers from purchasing homes in white neighborhoods;

"b. refusing to show and/or to offer to show as many houses to black or interracial homeseekers as to white prospective homeseekers regardless of the actual availability of houses for sale in the price range and area requested;

"c. aggressively pursuing white homeseekers to maximize the possibilities of their purchasing houses in the white communities specified above while making little or no effort to similarly encourage black homeseekers;

"d. directing blacks to houses in predominately black neighborhoods; and

"e. refusing to show and/or discouraging whites from purchasing homes in predominately black or interracial neighborhoods."

The complaint goes on to detail numerous specific instances of the above practices involving each of the defendants. These violations were uncovered by persons acting as "testers," that is, by persons posing as genuine homeseekers for the purpose of comparing the treatment afforded to persons of different races. Thirty-nine persons acted as testers during the course of the SPCA investigation and are named as individual plaintiffs in this lawsuit.

Plaintiffs allege that as a result of defendants' discriminatory practices, they have illegally been denied access to available housing on the basis of race and that they have been denied the social benefits of living in an integrated community. Plaintiffs seek to enjoin defendants from engaging in future racial steering and also seek to compel them to take affirmative steps to remedy the effects of their past discrimination. Plaintiffs also seek actual and punitive damages.

### B. Standing

Defendants argue that plaintiffs have not alleged sufficiently specific injury-in-fact to confer upon them standing to litigate the above claims. Any discussion of standing in the context presented by this case must begin with *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979). Plaintiffs in *Bellwood* were "testers" who attempted to determine whether defendant real estate companies were engaged in racial steering. Having

determined that defendants were indeed engaged in steering, plaintiffs commenced an action in federal district court, claiming that defendants had violated 42 U.S.C. § 3612 and 42 U.S.C. § 1982. The complaint alleged that defendants followed a practice of steering black homeseekers toward an integrated area of Bellwood, some twelve by thirteen blocks in dimension, and away from predominately white areas. Whites, on the other hand, were steered away from the integrated area of Bellwood.

On defendants' motion for summary judgment, the district court held that plaintiffs lacked standing to challenge defendants' discriminatory practices. The Seventh Circuit Court of Appeals reversed, *Village of Bellwood v. Gladstone Realtors*, 569 F.2d 1013 (7th Cir. 1978), holding that plaintiffs had standing on the basis of *Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972), which held that white residents of a segregated apartment complex had standing to bring suit under 42 U.S.C. § 3610 in order to challenge the denial of the their right to live in an integrated community. The Supreme Court granted certiorari and, with one imitation noted below, affirmed.

The Court noted initially that Congress intended to confer standing in suits brought pursuant to 42 U.S.C. §§ 3610 and 3612 to the fullest extent permitted by Article III of the United States Constitution. Thus, the so-called "prudential limitations" which require a plaintiff to show a particularized injury not shared by all or a large class of citizens, *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975), do not apply in cases involving housing discrimination. Instead, all that need be shown is that plaintiff "personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." 441 U.S. at 99, 99 S.Ct. at 1608.

The Court then turned to the injury allegedly suffered by the plaintiffs. Plaintiffs claimed that they had been denied the right to live in an integrated society. The Court construed the claim as referring only to the twelve by thirteen block integrated "target area" in which four of the six plaintiffs resided. Refusing to limit its earlier decision in *Trafficante*, the Court held that there is "no categorical distinction between injury from racial steering suffered by occupants of a large apartment complex and that imposed upon residents of a relatively compact neighborhood such as Bellwood." 441 U.S. at 114, 99 S.Ct. at 1615. The test, according to the Court, is not whether a "community is defined in terms of city blocks rather than apartment buildings," but rather it is whether plaintiffs have suffered a "distinct and palpable injury." 441 U.S. at 114, 99 S.Ct. at 1615. Finding that the social and economic injury allegedly caused by defendants' conduct was sufficiently direct with respect to those plaintiffs residing within the Bellwood target neighborhood, the Court affirmed the grant of standing to those plaintiffs. The Court reversed as to the two plaintiffs who resided outside of the target neighborhood on the ground that the complaint alleged injury only to the target neighborhood and its residents and made no allegations concerning individuals residing elsewhere.

Defendant Wauwatosa contends that plaintiffs' amended complaint alleges such a broad geographic area that standing is precluded under *Bellwood*. Defendant argues that plaintiffs' alleged injury stems from the segregated housing patterns which exist throughout the City of Milwaukee and the surrounding suburbs. *Bellwood*, it is argued, requires injury to a more compact, well-defined area. Heavy reliance is placed on the following passage from the *Bellwood* decision:

> " * * * A 'neighborhood' whose racial composition allegedly is being manipulated may be so extensive in area, so heavily or even so sparsely populated, or so lacking in shared social and commercial intercourse that there would be no actual injury to a particular resident. The presence of a genuine injury should be ascertainable on the basis of discrete facts presented at trial." 441 U.S. at 114, 99 S.Ct. at 1615.

The argument that plaintiffs do not suffer sufficient particularized injury by virtue of the fact that most of the Milwaukee area is segregated, however, ignores the practical realities of the Milwaukee housing market, i. e., the defendant real estate companies operate throughout the Milwaukee metropolitan area. Their alleged steering practices affect housing patterns throughout this area. The fact that the entire metropolitan area is segregated does not mean that residents of smaller, more discrete neighborhoods within that area have not suffered a real and palpable injury of the sort recognized in *Trafficante* and *Bellwood*.

Twenty-three of the thirty-nine individual plaintiffs reside within the SPCA service area described above. ("Answers and Objections of the Plaintiffs to the First Set of Interrogatories of Defendant Wauwatosa Realty Co.," filed January 19, 1978.) The SPCA service area is an integrated neighborhood with dimensions of approximately twenty-five by twelve blocks. Plaintiffs allege that defendants are steering white homeseekers away from this area while encouraging sales to blacks. · As a result, the area is becoming predominately black, and the residents are in danger of losing the benefits of living in an integrated community. This was precisely the situation faced by the plaintiffs who resided within the target area in *Bellwood*. As noted by the Court, residents of a changing neighborhood face significant social, professional, and economic losses. These losses are real and concrete and are sufficient to confer standing upon those plaintiffs who reside within the SPCA service area.

The defendants claim that the sixteen remaining plaintiffs are in a position similar to the plaintiffs whose claims were dismissed in *Bellwood* in that these plaintiffs live outside the SPCA service area in all white areas on Milwaukee's east, north, and northeast sides and in the suburbs of Fox Point and Wauwatosa. I find that this is not true because unlike the plaintiffs in *Bellwood*, these plaintiffs have alleged actual harm as a result of defendants' conduct. By discouraging black homeseekers from purchasing homes in these areas, defendants are depriving these plaintiffs of the benefits of living in an integrated community and are in effect consigning them to life in insulated "white ghettos." While these plaintiffs may not have standing to complain of the housing patterns which exist throughout the entire Milwaukee area, they do have standing to complain of the patterns which exist in their respective neighborhoods. Such neighborhoods may not be well defined in the amended complaint, but the plaintiffs are entitled to the opportunity to further define them at the time of trial.

■ The *Bellwood* case is an expansion of the scope of this country's fair housing laws and cannot be used as a device to limit plaintiffs' standing, for standing in cases such as the one at bar is available to the full extent permitted by Article III. If plaintiffs' allegations are true, they fall well within the bounds set by the constitution. Accordingly, judgment cannot be predicated upon plaintiffs' lack of standing to sue.

### C. Failure to State a Claim Upon Which Relief Can be Granted

Defendant also argues that those portions of the amended complaint which refer to plaintiffs' testing activities with respect to Wauwatosa do not state a claim upon which relief can be granted. Paragraphs 31–34 of the amended complaint contain allegations made specifically against defendant Wauwatosa. Paragraph 31 alleges that Wauwatosa "intentionally and willfully has engaged and continues to engage in a custom, pattern, practice and policy of racial steering as alleged above, including but not limited to, the examples which follow." In the following paragraphs, plaintiffs detail the experiences of five testers who dealt with Wauwatosa as prospective customers. Four of these testers were white and had essentially similar experiences: Wauwatosa agents encouraged them to consider listings in predominately white areas while disparaging homes in integrated or predominately

black areas. The one black tester alleges that she was discouraged from considering homes in predominately white areas and, in addition, was not provided with the same level of service as was provided to the white testers. Wauwatosa argues that such actions do not rise to the level of racial steering in that (1) there was no outright refusal to show listings to any of the testers, (2) there has been no showing that the agents' actions were racially motivated, and (3) there has been no showing that the disparaging remarks concerning integrated or black neighborhoods were untrue.

■ Initially it should be noted that the specific examples cited in paragraphs 31–34 of the amended complaint are supplemental and in addition to the more general allegations contained in paragraph 24 as quoted above. Wauwatosa recognizes this and does not dispute that these allegations, if true, are sufficient to state a cause of action. Thus, Wauwatosa does not seek a dismissal of the entire amended complaint by its motion, but rather seeks a determination that the specific acts complained of in paragraphs 31–34 are not in themselves illegal. ("Defendant Wauwatosa Realty's Reply Brief in Support of Motion for judgment on the Pleadings," filed March 29, 1978, at 7.) This the Court declines to do.

First, the Court is not convinced that the practices complained of in paragraphs 31–34 do not constitute a cause of action standing apart from the rest of the amended complaint. Unlawful steering has been defined in *Zuch v. Hussey*, 394 F.Supp. 1028, 1047 (E.D.Mich.1975), as:

" * * * the use of a word or phrase or action by a real estate broker or salesperson which is intended to influence the choice of a prospective property buyer on a racial basis. * * *

"Accordingly, any action by a real estate agent which in any way impedes, delays, or discourages on a racial basis a prospective home buyer from purchasing housing is unlawful. * * * "

The actions of the Wauwatosa agents complained of in paragraphs 31–34, if true, were intended to influence the choice of a potential home buyer on a racial basis. As such, the conduct of defendant's agents would be actionable.

Furthermore, even if such conduct does not constitute a cause of action standing apart from the other allegations of the complaint, proof of such conduct is highly relevant to many of the more general allegations contained in the amended complaint. Thus, while plaintiffs may have to prove more than the conduct complained of in paragraphs 31–34, it will not be prohibited from delving into such conduct during discovery or introducing such evidence of such conduct at trial as has been suggested by defendant Wauwatosa.

■ Wauwatosa has also moved for judgment dismissing the claim of the SPCA for damages arising from the expenses incurred in investigating the alleged steering practices of the defendants. This motion will be granted on the basis of the Seventh Circuit decision in *Village of Bellwood v. Gladstone Realtors*, 569 F.2d 1013 (7th Cir. 1978). In a portion of that decision not reviewed by the United States Supreme Court, the Seventh Circuit held that the Leadership Council for Metropolitan Open Communities, a public interest organization similar to the SPCA, could not maintain an action to recover institutional funds expended in exposing the steering practices of the defendant real estate companies. "The alleged dollar costs to the Council of attacking defendants' alleged practices * * * does not present independently cognizable injury." *Id.*, at 1017. See also *Mulqueeny v. National Commission On the Observance of International Women's Year, 1975*, 549 F.2d 1115, 1121 (7th Cir. 1977).

### III. *MOTION FOR CLASS CERTIFICATION*

Plaintiffs have moved for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs seek to represent the following proposed subclasses:

"(a) All black and interracial homeseekers who are currently seeking or who have sought homes in the Milwaukee

metropolitan area and who are or have been injured by the customs, policies, and practices alleged in the amended complaint;

"(b) All white homeseekers who are currently seeking or have sought homes in the Milwaukee metropolitan area and who are or have been injured by the customs, policies, and practices alleged in the amended complaint;

"(c) All black and interracial homeseekers who desire or have desired to purchase homes in the Milwaukee metropolitan area but who have been deterred from seeking such homes because of the customs, policies, and practices alleged in the amended complaint; and

"(d) All current and prospective residents of the Milwaukee metropolitan area who desire or will in the future desire the rights and benefits of living in a racially integrated neighborhood or community and who are or will be deprived of those rights and benefits by the customs, policies, and practices alleged in the amended complaint." ("Brief in Support of Plaintiffs' Motion for Class Action Determination," filed October 26, 1977, at 4–5.)

Rule 23 provides that a class action may only be certified if the following conditions are found to exist:

" * * * (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

The proposed class is so numerous that joinder would be impracticable. There are questions of law and fact which are common to the class and the representative parties can fairly and adequately protect the interests of the class. It is not clear, however, that the claims of the named plaintiffs are typical of the claims of all of the classes which they seek to represent.

The first three subclasses which plaintiffs seek to represent are potential home buyers who have been injured by defendants' conduct. Plaintiffs, however, in their capacity as testers, do not have standing to raise these claims. *Village of Bellwood v. Gladstone Realtors,* 569 F.2d 1013, 1015 (7th Cir. 1978). Plaintiffs are only able to claim injury as persons who have been denied the right to live in an integrated community. Members of the first three subclasses have suffered an entirely different injury from the named plaintiffs in that their claim for relief depends upon their status as home buyers. This difference affects proof of damages, causation, and liability. Such factors go to the very nature of a claim, and, accordingly, plaintiffs' claims cannot be said to be typical of the claims of the first three proposed subclasses.

The fourth subclass has suffered the same injury claimed to have been suffered by the named plaintiffs. Defendants argue that the supposed geographical limitations mandated by *Bellwood* preclude certification as a class at this time. At trial each of the plaintiffs is entitled to have the opportunity to prove the effect of defendants' conduct upon the particular geographic area in which he or she resides, or that the metropolitan area of Milwaukee is one common real estate housing market. The plaintiffs do adequately represent a cross section of Milwaukee's housing market. That market may well consist of many neighborhoods, and some of them may not be represented. The plaintiffs, however, are entitled to prove at trial, if they can, the nature of the Milwaukee housing market. The federal rules require "typicality." There need not be, for example, a named plaintiff residing in every all white Milwaukee suburb; it is enough that named plaintiffs reside in the representative suburbs of Fox Point and Wauwatosa. If it later appears that the named plaintiffs are not representative of some portion of the Milwaukee metropolitan area, the Court will be free to modify the contours of the class in accordance with such evidence. Rule 23(c)(1), Federal Rules of Civil Procedure. Unless such a showing is made at trial, however, the Court will not presume that the Mil-

waukee housing market is so fragmented that policies followed by areawide real estate companies do not affect Milwaukee's many neighborhoods in an essentially similar manner.

■ Finally, the Court finds that plaintiffs meet the requirements of Rule 23(b)(2) which provides that an action may be certified if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Since the conditions of Rule 23 have been fully met with respect to the fourth subclass, the Court will certify the action as maintainable as a class action on behalf of those persons described more fully in paragraph (d) above.

## IV. DISCOVERY

The last motions now before the court are plaintiffs' motions to compel discovery against defendants Relocation Realty, Inc. ("Relocation") and Keske Realty, Inc. ("Keske"). Both motions concern these defendants' responses to plaintiffs' first set of interrogatories.

### A. Defendant Relocation

Relocation objects to a number of plaintiffs' interrogatories insofar as they request information pertaining to areas outside of metropolitan Milwaukee and dates prior to 1968. Plaintiffs have conceded the validity of these objections and have agreed to limit the scope of the interrogatories to the metropolitan Milwaukee area and to the period of time commencing July 15, 1972, to the present.

■ Relocation objects to interrogatories numbered 2(c) and (d), 3(a), (c), and (d), 10, 13, 14, and 32 on the ground that they are not likely to lead to the discovery of relevant or admissible evidence. This objection, without more, is an insufficient basis for refusal to answer. A request for discovery must be complied with if there is a reasonable possibility that the information sought may be relevant to the subject matter of the action. 8 Wright & Miller, Federal Practice and Procedure § 2008 at 46–47 (1970). There is no requirement that the information sought be admissible at trial. *Id.* at 47–51. Plaintiffs' interrogatories are not irrelevant on their face and defendant's objection cannot be sustained.

■ Relocation also objects to interrogatories numbered 2(d), 3(a), (c), and (d), 7(h), 13, 14, 17(a)–(c), 24, 25, 26, 27, and 28 on the ground that compliance would be unduly burdensome and oppressive. Defendant, however, has not submitted any evidence in support of its objection. As stated in 4A Moore's Federal Practice § 33.20 at 33–105 and 33–106:

"A general objection that interrogatories are onerous and burdensome and require the party to make research and compile data raises no issue. The objection must make a specific showing of reasons why the interrogatory should not be answered."

The burden of proof is on the party who raises the objection. Defendant Relocation has not even attempted to meet this burden, and its objection cannot be sustained.

Plaintiff argues that Relocation's answers to interrogatories numbered 2(c)–(e), 3(a), 10, 12(a)–(g), and 31 are insufficient and seeks an order compelling more complete answers. Number 2(c) asks the defendant to name its assistant office managers, if any. Defendant is ordered to do so. Defendant is also ordered to provide information as to its Waukesha and Oconomowoc offices. The answer to number 2(d) should be supplemented to show which offices the secretaries and managers are assigned to. The answer to number 2(e) should include information as to defendant's Waukesha and Oconomowoc offices. The answer to number 3(a) must be supplemented to include information on job titles as was requested. Defendant has stated in response to number 10 that it does not know the race of the buyers and sellers and, therefore, will not be required to supplement this answer. Relocation will not be required to supplement numbers 12(a)–(g) to further identify the relevant business

records as its answer already does so. Plaintiffs' motion as to number 31 is denied, as defendant has sufficiently described its training program and has stated that it has no records concerning dates.

### B. *Keske*

Defendant Keske answered interrogatories numbered 2(d), 3(a)–(d), 10, 13, 14, 17, 20, 26, 27, 28, and 32 by stating that the relevant information could be found only by a search of Keske's voluminous business records, and further stating that plaintiffs were free to inspect such records. Plaintiffs contend that these answers are unresponsive.

On January 30, 1978, this Court determined that defendant Wauwatosa would not be required to search through its records in order to respond to plaintiffs' interrogatories, but Wauwatosa was required to make these records available to plaintiffs for inspection. Plaintiff has not suggested why Keske should be treated differently than Wauwatosa except for the fact that Wauwatosa submitted separate affidavits pertaining to the number of records it would be required to search. Keske, however, has included this information in its answer and this is sufficient. (Relocation made no such showing in its answers or otherwise.) Accordingly, plaintiffs' motion to compel discovery with respect to Keske is denied, and an order will be entered pursuant to Rule 34 of the Federal Rules of Civil Procedure that Keske provide plaintiffs with access to the documents and files necessary for a determination of the answers of the above-listed interrogatories.

### V. *ORDER*

IT IS THEREFORE ORDERED that defendant Wauwatosa Realty Company's motion for judgment on the pleadings is denied except that the claim of plaintiff Sherman Park Community Association for money damages is dismissed.

IT IS FURTHER ORDERED that plaintiffs' motion for certification as to subclasses (a), (b), and (c) as described above in section III is denied and, further, that plaintiffs' motion for class certification of subclass (d) as described above in section III is granted.

IT IS FURTHER ORDERED that plaintiffs' motion for an order compelling defendant Relocation Realty, Inc., to respond to interrogatories numbered 2(c) and (d), 3(a), (c), (d), and (g), 7(h), 10, 13, 14, 17(a)–(c), 24, 25, 26, 27, 28, and 32 be and hereby is granted.

IT IS FURTHER ORDERED that plaintiffs' motion for an order compelling defendant Relocation Realty, Inc., to supplement its responses to interrogatories numbered 2(c)–(e), 3(a), 10, 12(a)–(g), and 31 is granted as to numbers 2(c)–(e) and 3(a) and denied as to numbers 10, 12(a)–(g) and 31.

IT IS FURTHER ORDERED that plaintiffs' motion for an order compelling defendant Keske Realty, Inc., to respond to interrogatories numbered 2(d), 3(a)–(d), 10, 13, 14, 17, 20, 26, 27, 28, and 32 is denied provided that defendant Keske provide plaintiffs access to the documents and files necessary for a determination of the answers to those interrogatories at such place and for such period of time as is mutually agreed to by plaintiffs and defendant Keske Realty, Inc.