Lyle BOND, Mary Bond, Keith Farnham, Gerhard Fischer, Lucille Fischer, James McNeely, Wesley Mooney, Jr., Mary Mooney, Michael Wilson, Lillie Wilson, Fred Behul, and Erma Behul, Plaintiffs,

v.

Walter REGAL and Ingrid Regal, his wife, d/b/a Regal Crest Village of Brookfield; Daniel Trout and Terry Trout, Defendants.

Civ. A. No. 79–C–960.

United States District Court,
E. D. Wisconsin.

Jan. 22, 1982.

James A. Walrath, Milwaukee, Wis., for plaintiff.

Fred Behul, pro se.

Michael J. Jassak, Milwaukee, Wis., for defendants Walter Regal and Ingrid Regal, d/b/a Regal Crest Village of Brookfield.

John F. Fuchs, Milwaukee, Wis., for defendants Daniel Trout and Terry Trout.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

Plaintiffs have brought this action alleging that the defendants rented apartments in Regal Crest Village, a private apartment complex in the City of Brookfield, in a racially discriminatory manner in violation of 42 U.S.C. §§ 1982 and 3604. All plaintiffs except Fred Behul and Erma Behul are residents of Brookfield who allege that the discriminatory housing practices of Regal Crest Village have adversely affected the racial composition of their neighborhood and community. Plaintiff Fred Behul, who is Caucasian, and his wife Erma Behul, who is black, allege that on May 20, 1979, they sought to rent an apartment at Regal Crest Village and were treated in a discriminatory manner.

Currently before the Court is the defendants' motion for summary judgment. Defendants advance three grounds for summary judgment in their favor: (1) that plaintiffs Fred and Erma Behul failed to commence their § 3604 action within 180 days of the alleged discriminatory housing prac-

tice as required by 42 U.S.C. § 3612; (2) that the undisputed facts establish that plaintiffs Fred and Erma Behul were not discriminated against on the basis of race; and (3) that the remaining plaintiffs lack standing to challenge the rental practices at Regal Crest Village. This Court holds that summary judgment in favor of the defendants is appropriate with respect to defendants' first and third grounds, but that material facts remain in dispute with respect to whether plaintiffs Fred and Erma Behul were discriminated against on the basis of race in violation of § 1982.

## I. STATUTE OF LIMITATIONS FOR CLAIMS UNDER 42 U.S.C. § 3604

The original complaint in this action was filed on November 14, 1979. On November 21, 1979, the plaintiffs filed an amended complaint adding as plaintiffs Fred and Erma Behul. The original complaint neither included the Behuls among the plaintiffs nor mentioned the discrimination against the Behuls which allegedly occurred on May 20, 1979.

Under 42 U.S.C. § 3612(a), a civil action brought pursuant to 42 U.S.C. § 3604 must be commenced within 180 days after the alleged discriminatory housing practice occurred. The only discriminatory practice alleged by the Behuls occurred on May 20, 1979, 184 days before the Behuls were added as plaintiffs.

Nonetheless, the Behuls argue that the amendments to the original complaint made by the amended complaint relate back to the date of the original complaint. But Fed.R.Civ.P. 15(c) provides that an amendment relates back only if the new claim "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." The original complaint contained no mention of an act of discrimination on May 20, 1979. The Behuls' claim is distinct from the claim of the remaining plaintiffs that the continuing discriminatory housing practices of the defendants has prevented integration.

Because there is no genuine issue as to the foregoing facts, and because the de-

fendant is entitled to a judgment on the statute of limitations issue as a matter of law, summary judgment is appropriate. See Fed.R.Civ.P. 56(c). Thus, the cause of action Fred and Erma Behul assert under 42 U.S.C. § 3604 must be dismissed, although they may pursue their claim under 42 U.S.C. § 1982. See *Meyers v. Pennypack Woods Home Ownership Assn.*, 559 F.2d 894 (3rd Cir. 1977); *Hickman v. Fincher*, 483 F.2d 855 (4th Cir. 1973).

## II. FACTS REGARDING WHETHER FRED AND ERMA BEHUL WERE DISCRIMINATED AGAINST ARE IN DISPUTE

The defendants' second ground for summary judgment argues that the Behuls could not have been discriminated against because, on the undisputed facts, the Behuls were seeking an apartment they could move into no later than June 1, 1979, and the defendants had no apartments vacating until after that. The defendants base their motion for summary judgment on all the filings and proceedings in the case together with supporting affidavits. On summary judgment, all reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. E.g., *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). However, when a motion for summary judgment is supported as provided in Fed.R. Civ.P. 56, the party opposing the motion may not rest upon the mere allegations or denials of his pleading but must set forth by affidavit or otherwise specific facts showing their is a genuine issue for trial. Fed.R.Civ.P. 56(e).

In his deposition taken on July 2, 1981, Fred Behul testified that on May 20, 1979, he and his wife Erma visited Regal Crest Village and were told by defendant Daniel Trout, the manager, that no apartments were available. Examination of Fred Behul, July 2, 1981, at 22. Mr. Behul testified that Mr. Trout told them no units were available, but that at their insistence, Mr. Trout showed them an empty unit that was already rented. Mr. Behul told Mr. Trout that they needed an apartment immediately or no later than June 1, 1979. *Id.* at 25–26.

In his affidavit submitted in support of the motion for summary judgment, defendant Walter Regal indicates that on May 20, 1979, five units were available for rent. Two of the apartments, apartment 3 at 13345 West Burleigh and apartment 210 at 13405 West Burleigh, were leased through June 30, 1979, and would therefore not be ready for occupancy until July 1, 1979. The lease for apartment 2 at 13325 West Burleigh was extended as a month-to-month tenancy. While rent was paid through June 30, 1979, the April 15, 1979, notice indicated that the tenants would vacate on June 15, 1979. The lease for apartment 207 at 13405 West Burleigh was similarly extended until June 5, 1979. The apartment required substantial repairs and would not have been available before July 1, 1979. Lastly, notice to vacate apartment 112 at 13455 West Burleigh was given on April 18, 1979, and rent was paid through June 30, 1979. The affidavit of George Mueller submitted in support of the motion for summary judgment indicates that before May 20, 1979, apartment 112 had been reserved by oral agreement for Mr. Mueller and his wife.

The defendants argue that the foregoing facts establish that no apartments were available for occupancy before July 1, 1979. The only response by plaintiffs Fred and Erma Behul is that on May 20, 1979, Fred Behul observed some empty apartments and garage spaces. Examination of Fred Behul, July 2, 1981, at 18–20. However, simply that an apartment is empty does not imply that it is available to be rented. The uncontested facts as established by the affidavits submitted by the defendant do establish that no apartment was available to be rented by the Behuls until after June 1, 1979.

The defendants are incorrect, however, in assuming that that demonstrates the absence of discrimination. The deposition of Fred Behul indicates that as soon as Mr. Behul said they were looking for an apart-

ment, Mr. Trout said none were available. Examination of Fred Behul, July 2, 1979, at 22. Yet by the affidavit of defendant Walter Regal, some apartments would be ready for occupancy no later than July 1, 1981, roughly a forty day wait which is not unusually long. In fact, on May 20, 1979, the defendants might have believed that apartment 2 at 13325 West Burleigh would be vacated on June 15, 1979, or that apartment 112 at 13455 West Burleigh would be vacated on June 18, 1979. The Behul deposition indicates that Mr. Behul did not tell Mr. Trout that they needed an apartment no later than June 1, 1979, until they were walking toward the empty unit they were shown.

That the defendants, on May 20, 1979, had no apartments available until after June 1, 1979, does not mean that the Behuls were not discriminated against. It may affect the amount of damages suffered by the plaintiffs, but the plaintiffs were nevertheless entitled to the same treatment as any other potential tenant. Although no genuine issue exists with respect to the May 20, 1979, availability of a Regal Crest apartment by June 1, 1979, genuine issues of fact remain with respect to whether the Behuls were treated in a discriminatory manner.[1]

## III. STANDING OF THE REMAINING PLAINTIFFS

■ The plaintiffs other than the Behuls are all residents of the City of Brookfield.[2] They allege that the discriminatory housing practices of the Regal Crest Village have caused and contributed to racially segregated living patterns in their community and neighborhoods. The defendants, on their motion for summary judgment, argue that these resident plaintiffs have failed to satis-

fy the standing requirements of Article III of the United States Constitution.[3]

For a federal court to take jurisdiction over a matter, a "case or controversy" within the meaning of Article III must exist between the plaintiff and the defendant. The plaintiff must have a sufficiently " 'personal stake in the outcome of the controversy' as to warrant *his* invocation of federal court jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)) (emphasis original). "In order to satisfy Art. III, the plaintiff must show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979). This injury must be one "that is likely to be redressed if the requested relief is granted." 441 U.S. at 100, 99 S.Ct. at 1608. Plaintiffs must allege facts from which it reasonably could be inferred that absent defendants' practices, the injury about which they complain would not occur. See 422 U.S. at 504, 95 S.Ct. at 2207.

The Regal Crest Village is an 84 unit apartment complex located between 132nd and 134th and Burleigh Street, near the eastern edge of the City of Brookfield. The 84 units constitute 17.6% of the rental units in Brookfield. However, at any one time, between 120 and 130 persons reside at Regal Crest, less than one-half of one percent of Brookfield's population of 34,035. The non-white population of Brookfield is about two percent.

1. For similar reasons, the credit check of the Behuls is irrelevant. Nothing indicates that this was the basis of Trout's actions toward the Behuls.

2. Plaintiffs Lyle Bond, Mary Bond, James McNeely, Wesley Mooney, Jr., Mary Mooney, Michael Wilson, and Lillie Wilson are black, amended complaint ¶ 2; while plaintiffs Gerhard Fischer, Lucille Fischer, and Keith Farnham are white, amended complaint ¶ 3.

3. Standing to assert violations of 42 U.S.C. § 3604 under 42 U.S.C. § 3612 is as broad as that permitted by Article III. *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 109, 99 S.Ct. 1601, 1612, 60 L.Ed.2d 66 (1979). Because we conclude that the resident plaintiffs lack standing under Article III, this Court has no need to examine any prudential standing requirements under 42 U.S.C. § 1982.

None of the resident plaintiffs have ever been in the apartments at Regal Crest,[4] and none of them could say they knew anyone who lived there.[5] The plaintiff who lives nearest to Regal Crest lives one mile from it; the farthest lives about five miles away. See affidavit of Walter Regal, August 28, 1981, ¶ 10. The only connection with Regal Crest that these plaintiffs allege is that they live, work, shop, attend church, send their children to school, and recreate in Brookfield. See brief of plaintiff in opposition to summary judgment 3–5 (filed September 21, 1981).

In *Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972), the Supreme Court held that residents of an apartment complex could sue the owner of the complex for housing discrimination even though they were not the direct objects of the discrimination. The Court found that the "loss of important benefits from interracial associations," 409 U.S. at 210, 93 S.Ct. at 367, was a cognizable injury and was sufficient for Article III purposes.

The Supreme Court clarified the article III standing requirements for housing discrimination cases in *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979). There, the plaintiffs were the Village of Bellwood, one black and four white residents of Bellwood, and one black resident of a neighboring municipality. They alleged that the defendant realty companies engaged in racial steering, steering prospective black home buyers to a 12 by 13 block integrated "target" area, and steering prospective white home buyers away from the target area. The complaint alleged that the steering practices harmed the economic and social well-being of the citizens of Bellwood and deprived the individual plaintiffs of the "so-cial and professional benefits of living in an integrated society." 441 U.S. at 95, 99 S.Ct. at 1605.

The Court held that the Village and the four plaintiffs who resided in the target area had standing under Article III. The Court also held, however, that the Bellwood resident who resided outside of the target area and the resident of the neighboring community did not have standing. 441 U.S. at 112 n. 25, 99 S.Ct. at 1614 n. 25. The Court's reasoning, while not lucid, was apparently that the complaint only alleged an injury to the target area and its residents, not to individuals residing elsewhere. The Court added that it intimated no view as to whether persons residing outside the target neighborhood had standing if they allege actual harm. 441 U.S. at 112 n. 25, 99 S.Ct. at 1614 n. 25. This last comment is difficult to understand considering that all the individual plaintiffs seem to have alleged that they were deprived of the social and professional benefits of living in an integrated society. 441 U.S. at 95, 99 S.Ct. at 1605; *Village of Bellwood v. Gladstone Realtors*, 569 F.2d 1013 (7th Cir. 1978), *affirmed in part* 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979).

The Bellwood resident who resided outside the target area in *Gladstone, Realtors* seems to be in the same position as the resident plaintiffs in this case in that they are all outside the target area. The target area here is the apartment complex, and in *Gladstone* it was an area of city blocks. *Gladstone, Realtors* strongly suggests that the resident plaintiffs lack standing in this case.

Application of the general guidelines lead to the same result. The resident plaintiffs have not set forth a legally causal connection between the alleged housing discrimination of the defendants and the injury to

4. James McNeely had twice driven into the driveway and looked around but did not go into any buildings. Examination of James McNeely, July 23, 1981, at 16.

5. See examination of Lyle Bond, July 23, 1981, at 11; examination of Keith Farnham, July 23, 1981, at 12 (answers indicating general lack of personal knowledge about Regal Crest); exam-ination of Lucille Fischer, July 30, 1981, at 9; examination of James McNeely, July 23, 1981, at 18 (could not recall); examination of Wesley Mooney, Jr., July 30, 1981, at 13; examination of Michael Wilson, July 23, 1981, at 17 (answer indicating general lack of personal knowledge about Regal Crest).

them of living in a predominently white community.

The defendants do not have enough control of the housing patterns in Brookfield or do not operate throughout the City of Brookfield to give the resident plaintiffs standing. That the defendant apartment complex is located in Brookfield and that the defendants' activities have some impact on the racial makeup of Brookfield does not give standing to all citizens of Brookfield to sue them.

This result is consistent with *Sherman Park Community Assn. v. Wauwatosa Realty Co.*, 486 F.Supp. 838 (E.D.Wis.1980). In *Sherman Park*, the thirty-nine individual plaintiffs alleged that the defendant realty company was steering blacks into the Sherman Park area and steering whites into various surrounding areas of Milwaukee. This Court found that the sixteen plaintiffs who lived outside of Sherman Park but in the surrounding areas had standing because these plaintiffs alleged that the steering practices of the defendant were affecting their neighborhoods and that the defendants were doing business within their neighborhoods. In the present case, the defendants are not conducting their alleged practices in the neighborhoods of the resident plaintiffs.

THEREFORE, IT IS ORDERED that Fred and Erma Behul's cause of action under 42 U.S.C. § 3604 is dismissed with prejudice.

IT IS FURTHER ORDERED that defendants' motion for summary judgment on the issue of whether the defendants discriminated against plaintiffs Fred and Erma Behul in violation of 42 U.S.C. § 1982 is denied.

IT IS FURTHER ORDERED that the claims of plaintiffs Lyle Bond, Mary Bond, Keith Farnham, Gerhard Fischer, Lucille Fischer, James McNeely, Wesley Mooney, Jr., Mary Mooney, Michael Wilson, and Lillie Wilson are dismissed with prejudice.