**OPEN HOUSING CENTER, INC., Michelle Bagley, Shemetra Carter, Julie Johnson, Veronica Mitchell, Serge Momplaisir, Bilal Polson, Thomas Smith, Ingrid Thompson, Emily Walton, and Ayesha Z. Wilson, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**SAMSON MANAGEMENT CORP., Arnold Goldstein, 4554 41 St. Associates, 4750 Associates, Samlil Realty Corp., Salear Realty Co., 2180 Bronx Park East Associates, 511 West 235 Street Associates, 1560–1580 Pelham Parkway Associates, 51–15 Van Kleeck St. Associates, and Elwood St. Associates (Co–Op), Defendant.**

No. 91 Civ. 5111 (CSH).

United States District Court, S.D. New York.

Dec. 14, 1993.

---

7. Moreover, unlike the situation in *Eckert*, the notes are not even mixed facts and opinions, but purely facts.

Martin R. Gold, Gold, Farrell & Marks, New York City, for plaintiffs.

Vincent Lipari, Carro, Spanbock, Kaster & Cuiffo, Richard A. Wilsker, Ross & Hardies, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This case is before the Court on a motion by plaintiffs Michelle Bagley, Shemetra Carter, Julie Johnson, Veronica Mitchell, Serge Momplaisir, Bilal Polson, Thomas Smith, Ingrid Thompson, Emily Walton, and Ayesha Z. Wilson (the "Individual Plaintiffs") to certify a proposed class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

Class certification is prayed for in an Amended Complaint (hereinafter "the Complaint") dated November 4, 1992. The Court granted in part and denied in part defendants' motion to dismiss the original Complaint. *See* Memorandum Opinion and Order dated October 6, 1992. That opinion granted the Individual Plaintiffs leave to file an amended pleading.

## BACKGROUND

From approximately August 1990 to February 1991, plaintiff Open Housing Center, Inc.[1] ("OHC") conducted investigations into defendants'[2] alleged practice of racial dis-

---

1. Open Housing Center ("OHC") is a not-for-profit New York corporation whose primary purpose is to promote equal opportunity in housing in the New York metropolitan area. Under a grant from the United States Department of Housing and Urban Development, OHC initiated various testing programs to ascertain whether housing discrimination was being practiced in the New York metropolitan area. The Individual

Plaintiffs in this action were participants in one such testing program.

2. Defendants apparently own and/or manage more than ten apartment buildings in Manhattan, the Bronx, and Queens. *See* Complaint ¶¶ 15–26.

474

crimination against persons of African–American and/or Latino descent. The Individual Plaintiffs were employed by OHC to participate as "testers"[3] in OHC's investigations. Each of the Individual Plaintiffs is of African–American descent and one, Michelle Bagley, is of both African–American and Latino descent.[4] *See* Complaint ¶¶ 5–14.

The Individual Plaintiffs participated in tests that employed the following methodology: an African–American and/or Latino tester visited the superintendent of an apartment building owned or managed by defendants and requested a certain type of apartment in a specified rent range. Shortly thereafter, a white tester, appearing of similar age and representing himself/herself as having a similar income and family situation, visited the same building and requested an apartment of the same description and rent range. Occasionally, the order was reversed and the white tester visited the building prior to the African–American and/or Latino tester.

The tests conducted by plaintiffs allegedly demonstrate discrimination against each of the Individual Plaintiffs because of their status as African–Americans and/or Latinos. Defendants manifested their discrimination by allegedly engaging in the following practices: (a) denying persons of African–American and/or Latino descent the opportunity to inspect, rent, or negotiate for the rental of an apartment when housing opportunities were and remained available; (b) showing persons of African–American and/or Latino descent only the most expensive apartments; (c) giving persons of African–American and/or Latino descent incomplete tours of apartment buildings; (d) unnecessarily emphasizing or exaggerating to persons of African–American and/or Latino descent the security deposit requirement; (e) imposing upon persons of African–American and/or Latino descent more extensive credit checks than on white applicants; (f) lying to or otherwise making rental housing unavailable to persons of African–American and/or Latino descent when housing opportunities were and remained available; and (g) otherwise discriminating on the basis of race or color.

Plaintiffs commenced the instant action for declaratory judgment, compensatory and punitive damages, and injunctive relief to redress the alleged deprivation of their civil rights.[5] Plaintiffs' claims are brought under the Fair Housing Act of 1986, as amended, 42 U.S.C. § 3601 *et seq.;* the Civil Rights Act of 1870, 42 U.S.C. § 1981; the Civil Rights Act of 1866, 42 U.S.C. § 1982; the Ku Klux Klan Act, 42 U.S.C. § 1985(3); and § 296(5)(a) of the Executive Law of the State of New York.

The Individual Plaintiffs now seek certification of the following class:

All persons of African–American and/or Latino descent residing in New York City who have sought, are seeking, or will seek to rent housing from the defendants and who have been, are being, or will be subject to the defendants' discriminatory practices, or who have been deterred from applying for housing from the defendants because of defendants' practice of discrimination against African–Americans and Latinos.

## DISCUSSION

■ Class certification is proper if the four prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure are met and if the action is of a type listed in Rule 23(b).[6] The

3. A "tester" is an individual who, without the intent to rent an apartment, poses as a renter for purposes of collecting evidence of discriminatory practices.

4. Each of the Individual Plaintiffs is also a resident of New York City, with the exception of Michelle Bagley and Julie Johnson who reside in Teaneck, New Jersey and Hartsdale, New York, respectively. *See* Complaint ¶¶ 5–14.

5. The Individual Plaintiffs seek only declaratory and injunctive relief for the class. Their demand for money damages is brought solely in their individual capacity. *See* Complaint at 30–33; Plaintiff's Memorandum in Support of Motion for Class Certification at 28.

6. This case falls within Rule 23(b)(2) which permits the maintenance of a class action if "the party opposing the class has acted or refused to act on grounds generally applicable to the class thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

instant motion requires the Court to consider whether the requirements of Rule 23(a) can be satisfied when the proposed class representatives are "testers" and the proposed class includes individuals that actually intend to rent. The question is apparently one of first impression in this Circuit. For the reasons stated below, the Court grants plaintiffs' motion.

Rule 23(a) permits one or more class members to sue in a representative capacity on behalf of all class members only if:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

### I. Numerosity

■ Plaintiffs contend that the numerosity requirement is satisfied because potentially thousands of the approximate 3.6 million African–Americans and Latinos residing in New York City[7] have sought, are seeking, or will seek housing from defendants. Although this number is far from exact, the Court notes that reasonable estimates of class size can be sufficient to establish numerosity. *See, e.g., Glover v. Crestwood Lake Section 1 Holding Corp.*, 746 F.Supp. 301, 304 (S.D.N.Y.1990) (satisfaction of Rule 23(a)(1) not dependent exclusively upon a mathematical calculation); *McNeill v. New York City Housing Authority*, 719 F.Supp. 233, 252 (S.D.N.Y.1989) (plaintiff need not establish precise number of class members but may rely on reasonable inferences drawn from the facts); *Jane B. by Martin v. New York City*, 117 F.R.D. 64, 70 (S.D.N.Y.1987) (not fatal to class certification that class numbers cannot be determined with precision; estimates based on population census are sufficient). Here, it is a reasonable conclusion that the number of current African–American and Latino residents in New York City is large enough to include a sufficient number of individuals who fit the characteristics of the proposed class. This number of potentially

thousands would make joinder impracticable. *See McNeill*, 719 F.Supp. at 252 (noting that courts routinely have held classes far smaller than 1,059 persons to be sufficiently numerous); *Shankroff v. Advest, Inc.*, 112 F.R.D. 190, 192 (S.D.N.Y.1986) (class of more than 100 and potentially more than 1,000 individuals satisfies numerosity requirement); *Krome v. Merrill Lynch & Co.*, 637 F.Supp. 910, 921 (S.D.N.Y.1986) (same). Accordingly, the Court finds the requirements of Rule 23(a)(1) to have been met.

### II. Commonality

In support of their assertion that the proposed class members share common questions or law or fact, plaintiffs outline seven questions. The questions of fact allegedly shared by class members include (i) whether, in the provision of housing, the defendants have engaged and continue to engage in a general practice or policy of discrimination against persons of African–American and/or Latino descent; (ii) whether such discrimination results in African–American and/or Latino applicants receiving a disproportionately lesser number of apartments; and (iii) whether defendants' actions were and are motivated by racial animus, evil motive or intent or involve reckless or callous indifference. In addition, plaintiffs allege the following common questions of law: (i) whether the acts in which the defendants have engaged and continue to engage deprive the plaintiffs and the proposed class members of rights secured to them by 42 U.S.C. §§ 1981 and 1982; (ii) whether defendants have engaged and continue to engage in a conspiracy to deprive plaintiffs and the proposed class members of their equal protection and privileges under the law in violation of 42 U.S.C. § 1985(3); (iii) whether the acts in which defendants have engaged and continue to engage deprive plaintiffs and the proposed class members of rights secured by § 3601 *et seq.* of the Fair Housing Act; and (iv) whether the acts in which defendants have engaged and continue to engage deprive plaintiffs and the proposed class members of rights se-

---

**7.** *See* 1990 United States Census Bureau.

cured to them by § 296(5)(a)(2) of the Executive Law of the State of New York.

■ The commonality requirement of Rule 23(a)(2) is satisfied when the gravamen of the Complaint is that defendants discriminated against class members in the same general fashion. Thus, even factual differences between class members—unless grossly disparate—will not destroy commonality. *See Glover,* 746 F.Supp. at 305. *See also David v. Showtime/The Movie Channel, Inc.,* 697 F.Supp. 752, 757 (S.D.N.Y.1988) ("the key inquiry of Rule 23(a)(2) is whether [class members'] claims arise from a common nucleus of facts"); *Jane B. by Martin,* 117 F.R.D. at 70 (factual differences in needs of class members do not preclude certification; commonality requirement is met where general adequacy of defendant's services is questioned); *Lo Re v. Chase Manhattan Bank Corp.,* 431 F.Supp. 189, 196–97 (S.D.N.Y. 1977) (particularized allegations and subjective facts relating to hiring and promotion decisions do not destroy commonality when essentially the same issue is presented by each class member—namely, whether defendants engaged in a pattern or practice of discrimination). Here, the thrust of plaintiffs' complaint is that defendants have discriminated against and continue to discriminate against African–Americans and Latinos by their general practice of misrepresenting the availability, terms, and conditions of rental housing. The Court, therefore, finds that the proposed class members share common questions of law and fact as required by Rule 23(a)(2).

## III. Typicality

The primary focus of the dispute between plaintiffs and defendants is whether the class representatives—all of whom are testers and had no intention of renting—have claims that are typical of the proposed class members' claims. Plaintiffs contend that the typicality requirement is satisfied by defendants' general course of conduct affecting plaintiffs and all members of the proposed class. Defendants, on the other hand, contend that typicality cannot be satisfied because, as testers, plaintiffs have not suffered the same injury as the proposed class members. In deciding the issue of typicality, this Court notes that standing to sue—which counsel for plaintiff and defendant extensively discuss in their briefs—is separate and distinct from the issue of whether the class representatives have claims that are typical of the proposed class members.[8]

The issue of whether testers can be adequate representatives of a class whose members actually intend to rent apparently has never been addressed directly by the Supreme Court or the Second Circuit. Several district courts in other Circuits, however, have done so.[9] They disagree on whether

---

8. Standing to litigate claims under the Fair Housing Act and the Civil Rights Act is dependant upon whether the Individual Plaintiffs have suffered an injury that such statutes were designed to protect against. Following the Supreme Court's analysis in *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 373–74, 102 S.Ct. 1114, 1121–22, 71 L.Ed.2d 214 (1982), the Second Circuit recently held that plaintiff "testers" have standing to litigate under the Fair Housing Act, 42 U.S.C. § 3604, despite their expectation of receiving false information and their lack of any intention of renting an apartment. *See Ragin v. Harry Macklowe Real Estate Co.,* 6 F.3d 898 (2d Cir.1993). The court of appeals reasoned that the Federal Housing Act provides a right to truthful information about the availability of housing and, therefore, testers suffer injury in precisely the form that the Federal Housing Act was intended to guard against. *See also Chicago v. Matchmaker Real Estate Sales Center,* 982 F.2d 1086, 1095 (7th Cir.1992) (standing of testers under Fair Housing Act); *Village of Bellwood v. Dwivedi,* 895 F.2d 1521, 1525–26 (7th Cir.1990)

(same); *Cabrera v. Fischler,* 814 F.Supp. 269, 276 (E.D.N.Y.1993) (same); *Coel v. Rose Tree Manor Apts.,* 1987 WL 18393, at *6, (E.D.Pa. 1987) (same). Courts also have recognized that testers have standing to litigate under § 1982 of the Civil Rights Act. *See Watts v. Boyd Props., Inc.,* 758 F.2d 1482, 1485 (11th Cir.1985) (standing of tester under § 1982); *Meyers v. Pennypack Woods Home Ownership Assoc.,* 559 F.2d 894, 898 (3rd Cir.1977) (same). Here, the Individual Plaintiffs unquestionably have standing to litigate claims under the Fair Housing Act and the Civil Rights Act for injuries suffered from defendants' alleged misrepresentations regarding apartment availability. Standing to sue under the applicable statutes, however, does not automatically confer an ability to represent class interests unless the requirements of Rule 23(a) are met.

9. *See Dix–Jones v. Saxon Apts. Assocs. II,* 1987 WL 12033 (E.D.N.Y.1987); *Turner v. A.B. Carter, Inc.,* 85 F.R.D. 360 (E.D.Va.1980); *Sherman Park Community Assoc. v. Wauwatosa Realty Co.,* 486 F.Supp. 838 (E.D.Wis.1980).

testers may serve as class representatives for individuals who actually intend to rent.

In *Turner v. A.B. Carter, Inc.*, 85 F.R.D. 360 (E.D.Va.1980), African–American renters and testers brought an action for monetary damages under § 1982 of the Civil Rights Act and § 3604 of the Fair Housing Act for harm suffered by defendant's alleged racial steering practices. They sought to represent a class of "[African–American] persons who have rented or sought to rent residential property in the City of Richmond, Virginia ... and who have been, or continue to be, adversely affected by the defendant's alleged racial steering practices."[10] *Turner*, 85 F.R.D. at 362 n. 3. Although the court acknowledged that testers do suffer some type of injury under § 1982 and § 3604, its analysis focused on the qualitative differences in injuries suffered by testers and by class members. *Turner*, 85 F.R.D. at 366–67 (by denying renters opportunity to rent because of race, racial steering relegates renters to living in a segregated neighborhood; testers, however, are not so relegated and may claim only that they have been denied the provision of defendant's services). The *Turner* court held that this difference precluded it from designating testers as class representatives where a class claims monetary injury from being steered into racially segregated neighborhoods. *Turner*, 85 F.R.D. at 363, 364 n. 5 (fact that claims arise from same course of conduct and are based on the same legal theory is not dispositive of the typicality issue; court may screen out class representatives when there is insufficient factual or legal identity between class representatives and class members).[11] The *Turner* class ultimately was certified, however, with African–American renters, not testers, serving as class representatives.

More recently, the Eastern District of New York certified a class with testers as class representatives. *Dix–Jones v. Saxon Apts. Assocs. II*, 1987 WL 12033 (E.D.N.Y. 1987).[12] In *Dix–Jones*, testers sought injunctive relief and money damages under §§ 1981 and 1982 of the Civil Rights Act and § 3604 of the Fair Housing Act based on defendant's allegedly discriminatory practices. The class which testers sought to represent was comprised of African–Americans who "sought to rent housing in Staten Island, ..., New York and (1) to whom such housing was made unavailable by racial steering, misrepresentation or other discriminatory practices ...; or (2) who were steered away from buildings and neighborhoods with predominantly white residents and toward those with racially mixed or predominantly black residents; or (3) who were told, because of their race or color, that a dwelling was not available for inspection or rental when such dwelling was so available; or (4) who were otherwise discriminated against on the basis of race or color in defendants' provision of facilities." *Dix–Jones*, 1987 WL 12033, at *1. Relying on *Turner*, defendant argued that typicality was not met because testers do not suffer the same type of injury as individuals who have an intention of renting. The court rejected this argument, reasoning that *Turner* was inapplicable due to the Supreme Court's determination in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982), that testers do suffer some form of cognizable injury—injury from defendant's untruths as to the availability, terms, and conditions of housing—

---

10. Plaintiffs initially sought to represent a class of all persons, African–American and Caucasian, who rented or sought to rent residential property in the City of Richmond, Virginia and who were adversely affected by the defendant's alleged racial steering practices. The court, however, declined to certify a class which included white persons since none of the representative white testers purported to suffer injury from defendant's racial steering practices and since the claims of black testers would not be typical of white class members. *Turner*, 85 F.R.D. at 362 n. 3, 368. Thus, the focus of the court was whether African–American testers adequately represented African–American class members.

11. A similar analysis was performed by the court in *Sherman Park*, 486 F.Supp. at 844 (in action alleging racial steering practices in the sale of real estate, court found testers do not have claims sufficiently typical of home buyers; difference between testers and actual home buyers affects proof of damages, causation, and liability).

12. *Cf. Cabrera*, 814 F.Supp. at 273, where class action proceeded with testers as class representatives.

and, therefore, have standing to litigate under the Fair Housing Act. *Turner* simply took "too narrow a view of Rule 23(a)(3)" which requires that the claims of class representatives be typical of, but "not necessarily identical to," those of the class members. Concluding that testers may litigate on behalf of a class that suffers injury in the same manner, the court certified the class. *Dix–Jones*, 1987 WL 12033, at *2.

For the reasons discussed below, this Court finds *Dix–Jones* to present the more well-reasoned approach where, as here, testers seek declaratory and injunctive relief on behalf of the class members and monetary relief only in an individual capacity. In this District, courts have recognized that the typicality requirement may be satisfied whenever the representatives' claims arise from "the same practice or policy from which the proposed class members' claims arise and upon which the proposed class members' legal theory is based." *Glover*, 746 F.Supp. at 306. *See also Bruce v. Christian*, 113 F.R.D. 554, 558 (S.D.N.Y.1986). It has never been a requirement under Rule 23(a)(3) that representatives' claims be identical to those of class members. *Bishop v. New York City Dept. of Housing Preservation and Dev't*, 141 F.R.D. 229, 238 (S.D.N.Y.1992); *McNeill*, 719 F.Supp. at 252; *Sharif v. New York State Educ. Dept.*, 127 F.R.D. 84, 89 (S.D.N.Y.1989).

The requirements for typicality appear to be met in this action. The Individual Plaintiffs' claims and legal theory arise from the same practice and policy—defendants' misrepresentations as to housing availability, terms, and conditions—as the class members' claims and legal theory. Although exceptions to the general rule have been recognized, such as where there are "particularly unique fact patterns" with respect to a plain-

tiff, *Bishop*, 141 F.R.D. at 238, the uniqueness or atypicality of a plaintiff's claim "must be clear and must be such that the interests of the class are placed in significant jeopardy." *Bruce*, 113 F.R.D. at 558. Here, despite the Individual Plaintiffs' lack of intent to rent the apartments that they inspected, this Court finds no significant threat to class members' interests. The same course of conduct affected both plaintiffs and class members and certain injuries suffered by plaintiffs and class members were the same. This is sufficient to satisfy the typicality requirement where declaratory and injunctive, but not monetary, relief are sought on behalf of the class.[13]

Additionally, the Court rejects defendants' argument that the class should not include Latinos. Defendants assert that the complaint contains no allegations that defendants have discriminated against anyone because of their Latino descent. On this motion for class certification, however, it is irrelevant that Michelle Bagley—as the only Latino representative—is of both African–American and Latino descent. It is also irrelevant that Michelle Bagley does not have a Latino surname. First, at this stage, a court is prohibited from engaging in a merit-based assessment of plaintiffs' allegations. *Selzer v. Board of Educ.*, 112 F.R.D. 176, 178 (S.D.N.Y.1986) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974)).

Further, where declaratory and injunctive relief are sought in an action brought under the Fair Housing Act and the Civil Rights Act, this Court finds that African–Americans are not precluded from representing other minority class members. *See, e.g., Jones v. Milwaukee County*, 68 F.R.D. 638, 640–41 (E.D.Wis.1975) (Title VII action seeking declaratory and injunctive re-

13. The Court notes that plaintiffs are not seeking compensatory damages on behalf of the class, but only in an individual capacity. Where monetary relief is sought on behalf of a class, there may be typicality problems to the extent that injury to testers differs from injury to actual renters. That issue is not presented by the facts of this case and the Court, therefore, expresses no opinion on it. Adequacy of representation when monetary damages are sought for the class, however, was the precise issued raised and ad-

dressed in *Turner*, 85 F.R.D. at 363. Typicality problems may arise because a class of actual renters potentially may be entitled to a greater monetary recovery. In actions that have proceeded with testers as class representatives, testers generally have been awarded only nominal damages because of an inability to prove actual damages. *See, e.g., Cabrera*, 814 F.Supp. at 276–77 (citing *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Ruggiero v. Krzeminski*, 928 F.2d 558 (2d Cir.1991)).

lief where African–American plaintiffs were not precluded from representing persons of other minority and ethnic groups, including Spanish-surnamed and American Indian persons). In fact, since the Court is required to dismiss Michelle Bagley from this case, and Julie Johnson as well,[14] the case will proceed with only African–American representatives. This is not inconsistent with the purpose of the Fair Housing Act.

## IV. Adequacy of Representation

Rule 23(a)(4) provides that a class action is maintainable only if the proposed representatives fairly and adequately represent the interests of the class. This requirement is comprised of two elements: 1) "that the interests of the representative party ... coincide with those of the class and 2) that the representative party and his attorney can be expected to prosecute the action vigorously." As previously discussed, upon satisfaction of the conditions set by this Court, the representatives' interests will completely coincide with the interests of class members. The Court also is satisfied that the representatives and their counsel will vigorously prosecute the action. Prior to being hired by Plaintiff OHC, the Individual Plaintiffs were informed of the time and effort that would be required if OHC commenced litigation based on their tests and each agreed to accept the responsibilities involved. See Spiro Affidavit ¶ 20, 22. Defendants' do not challenge the adequacy of plaintiffs' counsel. Based on the affidavit submitted by plaintiffs' counsel, the Court finds that plaintiffs' counsel will vigorously prosecute the action. Accordingly, the requirements of Rule 23(a)(4) have been satisfied.

## CONCLUSION

For the foregoing reasons, the Court certifies the proposed class.

---

14. Neither Michelle Bagley nor Julie Johnson are residents of New York City—a prerequisite according to the definition of the proposed class. See Complaint ¶¶ 5, 7.